## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MARCEANN DUNNING, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

SUPERGOOP, LLC,

Defendant.

**Case No.**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, by her attorneys, on behalf of herself and all others similarly situated, alleges the following pursuant to the investigation of her counsel and based on information and belief, except as to allegations pertaining to personal knowledge as to herself.

### NATURE OF THE ACTION

1.      This is a class action against Defendant Supergoop, LLC ("Supergoop" or "Defendant") by Plaintiff on behalf of herself and all others similarly situated who purchased Supergoop Unseen Sunscreen SPF 40 products for face or body (the "Products" or the "Unseen Sunscreens").  The Products' Principal Display Panels ("PDPs") prominently state that the Products are "SPF 40." As described herein, the representation "SPF 40" on the PDPs is false and misleading as the Products[1] are not SPF 40 and, in fact, provide a significantly lower SPF protection.

2.      Consumers such as Plaintiff buy sunscreen to prevent sunburns and other effects of exposure to ultraviolet radiation such as skin cancer and premature aging (including skin spots,

---

[1] Based on the mislabeling of the Products, Plaintiff believes that the misconduct extends to other Supergoop sunscreen products to be identified in discovery.

wrinkles, and leathery skin).[2]  In the United States, approximately 4.3 million people are treated for basal cell carcinoma and squamous cell carcinoma, the two most common types of skin cancer, each year.[3]

3.     Nearly all sunscreen users report using sunscreen to protect against skin cancer (89%).[4]  Additionally, 69% of adults report using sunscreen to protect against premature aging, an increase of 25% since 2021.[5]

4.     Sun Protection Factor ("SPF") informs consumers of the level of protection provided by the sunscreen.  A sunscreen with a higher SPF filters more of the sun's rays than a sunscreen with a lower SPF.

5.     As set forth herein, Plaintiff conducted SPF testing of the Products in compliance with FDA requirements.  Plaintiff's testing determined that the SPF Label Value of the Supergoop Unseen Face Sunscreen is not SPF 40, as represented, but SPF 23, and the SPF Label Value of the Supergoop Unseen Body Sunscreen, which is also represented as SPF 40, is SPF 20.

## THE PARTIES

6.     Plaintiff MarceAnn Dunning is a citizen of New York and currently resides in Hornell, New York.  On or around April 12, 2023, Plaintiff Dunning purchased Supergoop Mini Unseen Sunscreen SPF 40 from Sephora in Kohl's Nanuet in Nanuet, New York for $22.  Based on the representation "SPF 40" on the PDP of the Product, Dunning reasonably believed that the Product provided SPF 40 sun protection.  Had she known the truth that the Product contained a

---

[2] FDA, https://www.fda.gov/consumers/consumer-updates/tips-stay-safe-sun-sunscreen-sunglasses (last visited Dec. 27, 2023).
[3] *Id.*
[4] Carson Kitzmiller, *Sunscreen Fountain of youth: Use of sunscreen for anti-aging purposes increased 25% from 2021-22,* MINTEL GROUP INC., March 7, 2023, https://www.mintel.com/press-centre/sunscreen-fountain-of-youth-use-of-sunscreen-for-anti-aging-purposes-increased-25-from-2021-22/.
[5] *Id.*

materially lower SPF, she would not have purchased it, or would have paid significantly less for it. As such, she has been injured as a direct result of Defendant's conduct.

7.     Defendant Supergoop LLC is a Delaware Limited Liability Corporation with primary office locations in San Antonio, Texas and New York, New York.[6]  Upon information and belief, Supergoop's headquarters is located in New York, NY, and its primary business functions emanate from New York.[7]  Defendant Supergoop is responsible for the formulation, manufacturing, labeling, advertising, distribution, and sale of the Products nationwide, including in this District.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant and at least one Class member are domiciled in different states.

9.     This Court has general personal jurisdiction over Defendant because it maintains its principal place of business in New York. Defendant is also subject to specific personal jurisdiction in this State because it maintains sufficient minimum contacts with the State of New York and a substantial part of the events and conduct giving rise to Plaintiff's and Class members' claims occurred in this state.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant

---

[6] SUPERGOOP!, https://supergoop.com/pages/careers (last visited Dec. 27, 2023).
[7] Supergoop's Chief Executive Officer until December 2023, Amanda Baldwin, was located in New York.  It is unknown at this time if a replacement CEO has been appointed.  Additionally, its Chief Operating Officer and Chief Financial Officer, Ryan Crowley, and Chief Marketing Officer, Britany LeBlanc, are located in New York.

resides in this district.

## FACTUAL ALLEGATIONS

### A.   History of Supergoop

11.     Supergoop is a sunscreen brand founded by Holly Thaggard. Thaggard launched the brand in 2007 after her friend was diagnosed with skin cancer when they were in their early 30s, and learned that a common reason that people do not wear sunscreen is because they do not like the feel of sunscreen on the skin.  She set out to create a product to "fill the void" for a "conscious, clean, feel-good product" that people would want to wear every day.[8]

12.     Supergoop brand products, including the Unseen Sunscreens, are sold directly to consumers through its website, and at online and brick and mortar retailers including Nordstrom, Sephora, Anthropologie, Blue Mercury, and Amazon.[9]

13.     In 2022, Supergoop reached $250 million in sales.[10]

### B.   Supergoop's Unseen Sunscreens

14.     Supergoop Unseen Sunscreen SPF 40 is a "100% invisible, weightless, scentless sunscreen with broad spectrum SPF protection, skincare benefits & a natural finish."

15.     Supergoop Unseen Sunscreen comes in formulations for both face (the "Unseen Face Sunscreen") and body (the "Unseen Body Sunscreen"), both labeled as SPF 40.

---

[8] Sunhee Grinnell, *Meet the "Norma Rae" of Sunscreen: Holly Thaggard, Founder and CEO of Supergoop!,* VANITY FAIR (Jan. 4, 2018), https://www.vanityfair.com/style/2018/01/meet-the-norma-rae-of-sunscreen-holly-thaggard-founder-and-ceo-of-supergoop#:~:text=It%20was%20in%202007%20that,million%20people%20worldwide%20each%20year.
[9] SUPERGOOP!, https://supergoop.com/pages/find-supergoop-near-you (last visited Dec. 27, 2023).
[10] Hikmat Mohammed, *Supergoop is Aiming to Build an SPF Empire,* WOMEN'S WEAR DAILY (July 11, 2023), https://wwd.com/beauty-industry-news/skin-care/amanda-baldwin-supergoop-interview-ceo-1235739876/.




**Figure 1.**

The Supergoop Unseen Face Sunscreen (left) and Unseen Body Sunscreen (right) showing the Products' PDPs.

16.     A unique attribute of the Unseen Sunscreens is their "invisible" formulation. While many sunscreens appear white out of the tube and/or when applied on the skin, the Unseen Sunscreens are nearly clear as shown below:



17.     The formulation of the Unseen Face Sunscreen allows it to double as a primer, which is a cosmetic product used to allow makeup to go on more smoothly and stay on longer.

18.     Supergoop describes the Unseen Sunscreens as: "[t]he game changer, the industry-innovator, the original invisible SPF" and an "award-winning, iconic bestseller."

19.     The Unseen Face Sunscreen was launched in 2018 and comes in three sizes. The cost and size of each is shown in the chart below:

| Size | Price |
|------|-------|
| 1.7 oz | $38 |
| 1 oz | $28 |
| .68 oz | $22 |

20.     On Amazon.com, the Unseen Face Sunscreen is the #16 ranked product in the Facial Sunscreen category and has over 14,000 reviews.[11]

21.     The Unseen Body Sunscreen was launched in 2023 and comes in a 3.4 oz size sold for $42.

22.     The Products are priced at a premium compared to comparable products that are not advertised as SPF 40.

**C.     SPF**

**i.     Overview**

23.      "SPF is a measure of how much solar energy (UV radiation) is required to produce sunburn on protected skin (i.e., in the presence of sunscreen) relative to the amount of solar energy required to produce sunburn on unprotected skin."[12] A higher SPF will have a higher protection against sunburn.

**ii.     Consumers Care About a Sunscreen Product's SPF Value**

24.     The SPF value is material to consumers, as higher SPFs provide greater sun protection.  Consumers frequently shop for sunscreens based on a product's SPF.

---

[11] AMAZON.COM, INC., https://www.amazon.com/Supergoop-Unseen-Sunscreen-SPF-1-7/dp/B08CFVM1TT (last visited Dec. 27, 2023).
[12] FDA, https://www.fda.gov/about-fda/center-drug-evaluation-and-research-cder/sun-protection-factor-spf (last visited Dec. 27, 2023).

25.     SPF is the most important attribute of a sunscreen product from the perspective of consumers.  A 2021 study published in JAMA Dermatology[13] found that 72% of participants reported that SPF was the most important information in selecting a sunscreen product.

26.     SPF determines whether a sunblock is recommended to prevent skin cancer.  The American Academy of Dermatology recommends that everyone use sunscreen that is ***SPF 30 or higher***, offers broad spectrum (UVA and UVB) protection, and is water-resistant.[14]

### iii.     FDA Regulations Set Forth a Testing Methodology for a Sunscreen's SPF Label Value

27.     The Food and Drug Administration ("FDA") regulates sunscreens to ensure that they meet safety and effectiveness standards. 21 CFR § 201.327(i) sets forth specific requirements to determine a sunscreen's SPF.  Pursuant to these regulations, sunscreen products are tested on the backs of human subjects, after which five successive doses of UV rays are applied. 21 CFR § 201.327(i)(2)(ii)(D)(4)(i); 21 CFR § 201.327(i)(2)(ii)(D)(5)(iii).

28.     The test must include enough subjects to obtain a minimum of 10 valid test results (21 CFR § 201.327(i)(2)(ii)(D)(3)(i), from which the mean, standard deviation, t value and standard error ("SE") are determined.  21 CFR § 201.327(i).  The SPF Label Value equals the largest whole number less than *Mean SPF - (t x SE).* 21 CFR § 201.327(i)(2)(ii)(D)(6)(ii).

29.     Pursuant to 21 CFR § 201.327(a), the SPF listed on the Principal Display Panel of a Sunscreen Product must be the numerical SPF value from a test result in accordance with 21 CFR § 201.327(i).  This SPF value is referred to as the "SPF Label Value."

---

[13] Calvin P. Tribby, et al., *Perceived Usefulness and Recall of Sunscreen Label Information by Consumers,* JAMA Dermatol., 157(5):573-576 (May 1, 2021), *available at* https://pubmed.ncbi.nlm.nih.gov/33760056/.
[14] AMERICAN ACADEMY OF DERMATOLOGY ASSOCIATION, https://www.aad.org/media/stats-sunscreen (last visited Dec. 27, 2023).

### iv.    The Products Are Not SPF 40 as Advertised

30.    Unbeknownst to consumers, the Unseen Sunscreens do not provide SPF 40 sun protection as advertised.

31.    An SPF test conducted in accordance with FDA regulations for determination of SPF Label Value revealed that the Unseen Face Sunscreen has an SPF Label Value of 23 and the Unseen Body Sunscreen has an SPF Label Value of 20.

32.    Defendant knew or should have known that the Products contain a materially lower SPF protection than the advertised SPF 40 stated on the Products' labels because they were required to perform testing in accordance with FDA regulations to determine the Products' SPF Label Values.

33.    Plaintiff and the Class members relied upon, and purchased the Products, believing that the Products provided SPF 40 sun protection as indicated on the Products' PDPs.

34.    Plaintiff would not have purchased the Supergoop Unseen Face Sunscreen product had she known it had an SPF Label Value of 23.

35.    Plaintiff would purchase the Product again if it had a true SPF Label Value of SPF 40, as advertised.

36.    Defendant's statements were false and misleading to a reasonable consumer because the Products are not SPF 40 as advertised and had a true SPF Label Value of 23.

37.    Had Plaintiff and Class members known that the Products were not SPF 40 as advertised, they would not have purchased the Products, or would not have paid such a high price for the Products.

38.     As a direct result of Defendant's false and misleading statements, Plaintiff and the Class were damaged as described herein because they did not receive the benefit of the advertised SPF 40 and were deprived of the benefit of the bargain they were promised by Defendant.

## CLASS ALLEGATIONS

39.     Plaintiff brings this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) a representative of the following class:

> All persons in the United States who purchased the Products between 2018 and the Present ("Class Period") (the "Class"),

and subclass:

> All persons in New York who purchased the Products during the Class Period (the "New York Subclass").

The Class and New York Subclass shall be referred to herein as the "Classes."

40.     Plaintiff reserves the right to modify, change, or expand the Class and New York Subclass definitions based upon discovery and further investigation.

41.     Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) Defendant, Defendant's subsidiaries, affiliates, parents, successors, predecessors, and any entity in which Supergoop or their parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

42.     **Numerosity:** The Classes each consist of at least tens of thousands of individuals, making joinder impractical.

43.     **Commonality and Predominance:** Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Classes include, but are not limited to:

a.    Whether Defendant labels and advertises the Products in a way that is misleading to a reasonable consumer;

b.    whether, by the misconduct set forth in this Complaint, Defendant has engaged in unfair, deceptive, or unlawful business practices with respect to the Products;

c.    Whether Defendant's conduct violates New York Gen. Bus. Law §§ 349 and 350.

d.    Whether Defendant's labeling of the Products as SPF 40 constitutes an express warranty;

e.    Whether Defendant's breached an express warranty to Plaintiff and members of the Classes;

f.    Whether Defendant's mislabeling of the Products resulted in harm to Plaintiff and the Classes; and

g.    Whether Defendant should be enjoined from engaging in such conduct in the future.

44.    **Typicality:** Plaintiff's claims are typical of the claims of members of the Classes in that Plaintiff, like all members of the Classes, has been injured by Supergoop's misconduct by purchasing the Products that were falsely represented as SPF 40.

45.    **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including consumer protection cases.  Plaintiff does not have any interests antagonistic to those of the Classes.

46.    **Superiority:** A class action is superior to other available methods for the fair and

efficient adjudication of this controversy. Class-wide damages are essential to induce Supergoop to comply with federal and state law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Supergoop's financial resources, members of the Classes are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

47. **Injunctive relief:** Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole.

## TOLLING OF THE STATUTES OF LIMITATIONS

48. The applicable statutes of limitation have been tolled as a result of Defendant's knowing and active concealment and denial of the facts alleged herein.

49. Supergoop advertised the Products as SPF 40 despite knowing that the Unseen Face Product's true SPF Label Value was SPF 23 and the Unseen Body Sunscreen's true SPF Label Value was SPF 20, substantially lower than SPF 40.

50. Plaintiff and members of the Classes could not have discovered the full scope of Defendant's conduct at an earlier date by the exercise of due diligence because of the affirmative, deceptive practices and techniques of secrecy employed by Defendant, including, but not limited to: (1) there were no disclosures or other indication that would inform a reasonable consumer that the Products were not SPF 40 as advertised; (2) the manner in which FDA-complaint SPF testing is conducted is highly technical; and (3) conducting such testing requires advanced expertise,

beyond the scope of a reasonable consumer.

51.     The earliest Plaintiff and members of the Classes could have known about Defendant's conduct was shortly before the filing of this Complaint.

52.     Defendant was under a duty to disclose the actual SPF of the Products but did not do so. Defendant is therefore estopped from relying on any statute of limitations under the discovery rule.

53.     Plaintiff and members of the Classes were not aware that the Products were not SPF 40 as advertised.

54.     Plaintiff and members of the Classes exercised due diligence to uncover the facts alleged herein and did not have actual or constructive knowledge of Defendant's misconduct by virtue of their fraudulent concealment.

55.     Accordingly, all statutes of limitation are tolled under the doctrine of fraudulent concealment.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of New York Gen. Bus. Law § 349**
**(On behalf of Plaintiff Dunning and the New York Subclass)**

56.     Plaintiff incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

57.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

58.     Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations about the SPF of the Products, which misled consumers to believe that the Products contained a higher SPF than they actually did.

59.     Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff purchased the Products for her own personal use. In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Products provided SPF 40 sun protection. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

60.     Defendant's deceptive acts and practices were directed at consumers as they are the purchasers of its Products.

61.     Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products would provide SPF 40 sun protection as labeled, when they do not. By advertising prominently that the Products provide such benefits, Defendant proves that information about these benefits is material to consumers. If such information were not material, Defendant would not feature it prominently on the front label of the Products. As a result of its deceptive acts and practices, Defendant has sold thousands of the Products to unsuspecting consumers across New York and nationwide. If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiff and other members of the New York Subclass would not have purchased them or would not have paid as much as they did for them.

62.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations, Plaintiff and other members of the New York Subclass were injured in that they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant

advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about purported benefits of the Products were truthful.

63.      On behalf of herself and the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or $50 dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Violation Of New York's Gen. Bus. Law § 350**
**(On behalf of Plaintiff Dunning and the New York Subclass)**

64.      Plaintiff incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

65.      Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

66.      Defendant falsely advertised the Products to mislead consumers into believing that the Products provide SPF 40 sun protection.

67.      Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff purchased the Products for her own personal use. In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Products had SPF 40 sun protection. Plaintiff would not have purchased the Products, or would have paid substantially less for the Products, had she known the true SPF of the Products.

68.      Defendant's deceptive acts and practices were directed at consumers.

69.      Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations. If

Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiff and other members of the New York Subclass would not have purchased the Products or would not have paid as much as they did for them.

70.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations, Plaintiff and other members of the New York Subclass were injured in that they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about purported benefits of the Products were truthful.

71.     On behalf of herself and the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or $500 dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF
**Breach of Express Warranty**
**(On behalf of Plaintiff Dunning, the Class, and the New York Subclass)**

72.     Plaintiff incorporates by reference and re-alleges herein all allegations contained in all preceding paragraphs of this Complaint.

73.     Plaintiff brings this claim individually and on behalf of the members of the Class and New York Subclass against Defendant.

74.     Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products are "SPF 40."

75.     Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff

and members of the Classes.

76.     In fact, the Products do not conform to Defendant's representations and warranties because the Products are not SPF 40 as advertised; the Unseen Face Sunscreen has an actual SPF Label Value of 23, and the Unseen Body Sunscreen has an actual SPF Label Value of 20.  By falsely representing the Products in this way, Defendant breached its express warranty.

77.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial because they would not have purchased the Products, or would have paid substantially less for them, had they known they known the Products were not SPF 40 as advertised.

78.     On December 21, 2023, Plaintiff's counsel sent Defendant a letter a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313 and 2-607 advising that Defendant breached an express warranty and demanding that Defendant make full restitution by refunding the monies received therefrom.

<u>FOURTH CLAIM FOR RELIEF</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff Dunning and the Class)**

79.     Plaintiff incorporates by reference and re-alleges herein all allegations contained in all preceding paragraphs of this Complaint.

80.     Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

81.     Plaintiff and Class members conferred benefits on Defendant by paying money to Defendant for the purchase of the Products.

82.     Defendant has knowledge of such benefits.

83.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchase of the Products.  Retention of those moneys under these

circumstances is unjust and inequitable because Defendant misrepresented that the Products provide SPF 40 sun protection when the Products' SPF Label Values are materially lower than SPF 40.

84.      Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A.      Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

B.      Enter judgment in favor of Plaintiff and the Classes;

C.      Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and members of the Classes, including enjoining Defendant from representing the Products as SPF 40.

D.      Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and Class members are entitled;

E.      Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F.      Award Plaintiff and members of the Classes pre- and post-judgment interest as provided by law;

G.      Enter such other orders as may be necessary to restore to Plaintiff and members of the Classes any money and property acquired by Defendant through its wrongful conduct;

H.      Award Plaintiff and members of the Classes reasonable litigation expenses and attorneys' fees as permitted by law; and

I.      Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: December 28, 2023                          Respectfully submitted,

                                                  /s/ *Christian Levis*
                                                  Christian Levis
                                                  Nicole A. Veno
                                                  Amanda Fiorilla
                                                  **LOWEY DANNENBERG, P.C.**
                                                  44 South Broadway, Suite 1100
                                                  White Plains, NY 10601
                                                  Telephone: (914) 997-0500
                                                  Facsimile: (914) 997-0035
                                                  clevis@lowey.com
                                                  nveno@lowey.com
                                                  afiorilla@lowey.com