# EXHIBIT A

2024 WL 4352496
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Beth BOWEN, Individually and
on Behalf of All Others Similarly
Situated, Plaintiff-Appellant,

v.

ENERGIZER HOLDINGS, INC.; Edgewell
Personal Care Company; Edgewell Personal
Care Brands, LLC; Playtex Products, Inc.; Sun
Pharmaceuticals, LLC, Defendants-Appellees.

No.23-55116
|
Argued and Submitted May
13, 2024 Pasadena, California
|
Filed October 1, 2024

**Synopsis**
**Background:** Consumer brought putative class action in
diversity against sunscreen manufacturers and distributors
alleging that products she bought contained dangerous
levels of benzene, contrary to defendants' representations
that products were safe, in violation of California's False
Advertising Law (FAL) and consumer protection statutes.
The United States District Court for the Central District of
California, Michael W. Fitzgerald, J., 2023 WL 1786731,
granted defendants' motion to dismiss. Consumer appealed.

**Holdings:** The Court of Appeals, Mendoza, Circuit Judge,
held that:

[1] as a matter of first impression, when court is faced with
motion to dismiss for lack of subject matter jurisdiction that
raises a factual challenge to Article III standing, court must
apply summary judgment standard and leave resolution of
material factual disputes to the trier of fact when the issue
of standing is intertwined with an element of the merits of
plaintiff's claim;

[2] consumer's case raised intertwined standing and merits
issues, such that resolution of material factual disputes were
for trier of fact to decide;

[3] consumer's allegations outlined theory of economic injury
that qualified as an injury in fact for Article III standing
purposes;

[4] consumer met her burden to satisfy causation element of
standing; and

[5] consumer met her burden to establish redressability
element for Article III standing.

Reversed and remanded.

West Headnotes (22)

**[1]      Federal Courts** 🔑
Court of Appeals reviews a district court's
dismissal for lack of standing de novo. Fed. R.
Civ. P. 12(b)(1).

**[2]      Federal Civil Procedure** 🔑
To satisfy Article III's case or controversy
requirement, a plaintiff must establish that she
has standing to invoke the jurisdiction of the
federal courts. U.S. Const. art. 3, § 2, cl. 1.

**[3]      Federal Civil Procedure** 🔑
To establish Article III standing, plaintiff must
show (i) that she suffered an injury in fact that is
concrete, particularized, and actual or imminent;
(ii) that the injury was likely caused by the
defendant; and (iii) that the injury would likely
be redressed by judicial relief. U.S. Const. art. 3,
§ 2, cl. 1.

**[4]      Federal Courts** 🔑
A "factual attack" on jurisdiction contests the
truth of the plaintiff's factual allegations, usually

by introducing evidence outside the pleadings.
Fed. R. Civ. P. 12(b)(1).

**[5]    Federal Courts** 🔑

A "facial attack" accepts the truth of the
plaintiff's allegations but asserts that they are
insufficient on their face to invoke federal
jurisdiction. Fed. R. Civ. P. 12(b)(1).

**[6]    Federal Civil Procedure** 🔑

Rules governing a factual challenge to standing
provide that once a defendant has contested
the truth of the plaintiff's factual allegations,
the plaintiff has the burden to support her
jurisdictional allegations with competent proof.
Fed. R. Civ. P. 12(b)(1).

**[7]    Federal Courts** 🔑

If the existence of jurisdiction turns on disputed
factual issues concerning plaintiff's standing and
those jurisdictional disputes are not intertwined
with the merits of the claim, then it falls to the
district court to resolve those factual disputes
itself. Fed. R. Civ. P. 12(b)(1).

**[8]    Federal Courts** 🔑

When jurisdictional issues are intertwined with
an element of the merits of the plaintiff's claim,
the court must treat motion to dismiss for lack
of subject matter jurisdiction like a motion for
summary judgment and leave the resolution of
material factual disputes to the trier of fact. Fed.
R. Civ. P. 12(b)(1).

**[9]    Federal Courts** 🔑

Jurisdictional issues and substantive issues are
deemed intertwined, such that the district court
is required to leave the resolution of material
factual disputes to the trier of fact, when the
question of jurisdiction is dependent on the
resolution of factual issues going to the merits.
Fed. R. Civ. P. 12(b)(1).

**[10]    Federal Courts** 🔑

Jurisdiction and substance might also be
intertwined, precluding district court from
finding disputed facts in resolving factual attack
on subject matter jurisdiction, when the claim at
issue arises under the Constitution. Fed. R. Civ.
P. 12(b)(1).

**[11]    Removal of Cases** 🔑

In the context of a motion to remand to state
court a case involving federal-officer removal
jurisdiction, the district court may not resolve
a factual dispute material to federal-officer
jurisdiction that is intertwined with an element of
the plaintiff's claim. 28 U.S.C.A. § 1442.

**[12]    Federal Courts** 🔑

When court is faced with motion to dismiss for
lack of subject matter jurisdiction that raises a
factual challenge to Article III standing, court
must apply summary judgment standard and
leave resolution of material factual disputes to
the trier of fact when the issue of standing is
intertwined with an element of the merits of
plaintiff's claim. U.S. Const. art. 3, § 2, cl. 1; Fed.
R. Civ. P. 12(b)(1), 56.

**[13]    Federal Courts** 🔑

Obligation of federal courts to exercise
jurisdiction when it attaches is no less important
when a plaintiff invokes federal court's diversity
jurisdiction, and therefore there is no basis to
apply differing standards to factual attacks on
Article III standing in cases when the court's
subject-matter jurisdiction stems from diversity
of citizenship. U.S. Const. art. 3, § 2, cl. 1; 28
U.S.C.A. § 1332.

**[14]    Antitrust and Trade Regulation** 🔑

Where plaintiffs in a false-advertising case
contend that they paid more for a product than

2024 WL 4352496

they otherwise would have paid, or bought it when they otherwise would not have done so they have suffered an Article III injury in fact. U.S. Const. art. 3, § 2, cl. 1.

**[15]    Antitrust and Trade Regulation** 🔑

A plaintiff proceeding on an overpayment theory of Article III standing typically must allege that the defendant made false representations—or actionable non-disclosures—about the product. U.S. Const. art. 3, § 2, cl. 1.

**[16]    Antitrust and Trade Regulation** 🔑

Whether a plaintiff has satisfied economic-injury element of a substantive claim under California's False Advertising Law (FAL) is a distinct inquiry from whether plaintiff satisfies Article III's standing requirements; a plaintiff's failure to satisfy strictures of California law is by no means determinative of whether a plaintiff has satisfied strictures of Article III. U.S. Const. art. 3, § 2, cl. 1; Cal. Bus. & Prof. Code § 17500 et seq.

**[17]    Federal Courts** 🔑

Appeal of dismissal of consumer's suit alleging sunscreen manufacturers and distributors violated California's False Advertising Law (FAL) by representing that products containing benzene were safe raised intertwined standing and merits issues, such that Court of Appeal had to assess motion to dismiss as it would a motion for summary judgment and leave resolution of material factual disputes regarding Article III standing to trier of fact, where resolution of overpayment theory of economic injury for the Article III standing issue, whether manufacturer made false representations or actionable non-disclosures about the product, necessarily required resolution of merits issue, whether manufacturer's representations and non-disclosures were actionable under California law. U.S. Const. art. 3, § 2, cl. 1; Cal. Bus. & Prof. Code § 17500 et seq.; Fed. R. Civ. P. 12(b)(1).

**[18]    Antitrust and Trade Regulation** 🔑

Consumer's overpayment allegations that she spent money to buy sunscreen products she would not otherwise have bought or would have paid less for, absent manufacturers' and distributors' alleged misconduct in representing products as safe when they allegedly contained dangerous levels of benzene, outlined theory of economic injury that qualified as injury in fact for Article III standing to bring her claim under California's False Advertising Law (FAL); Article III standing caselaw recognized that consumers hoodwinked into buying a disappointing product may have a cognizable injury-in-fact. U.S. Const. art. 3, § 2, cl. 1; Cal. Bus. & Prof. Code § 17500 et seq.

**[19]    Federal Courts** 🔑

Evidence presented by parties gave rise to disputes of material fact as to the truthfulness of sunscreen manufacturers' and distributors' representations that products were safe and as to whether the omission of benzene on the label was a misrepresentation, thus rendering dismissal of consumer's action alleging violations of California's False Advertising Law (FAL) and other consumer protection statutes on standing grounds inappropriate; evidence including Food and Drug Administration (FDA) documents did not resolve question of whether benzene was safe or unsafe at any level. U.S. Const. art. 3, § 2, cl. 1; Cal. Bus. & Prof. Code § 17500 et seq.; Fed. R. Civ. P. 12(b)(1).

**[20]    Federal Courts** 🔑

Court of Appeals has an independent obligation to consider standing sua sponte.

**[21]    Antitrust and Trade Regulation** 🔑

Consumer met her burden to satisfy causation element of Article III standing in action alleging that sunscreen manufacturers and distributors violated California's False Advertising Law (FAL) and other consumer protection statutes,

Bowen v. Energizer Holdings, Inc., --- F.4th ---- (2024)

2024 WL 4352496

where she alleged that manufacturers and distributors made false misrepresentation about safety of the products she purchased, which allegedly contained dangerous levels of the carcinogen benzene. U.S. Const. art. 3, § 2, cl. 1; Cal. Bus. & Prof. Code § 17500 et seq.

**[22]    Antitrust and Trade Regulation** 👈

Consumer met her burden to establish redressability of her alleged injuries by judicial relief, as required for Article III standing in action alleging that sunscreen manufacturers and distributors violated California's False Advertising Law (FAL) and other consumer protection statutes, where she plausibly alleged that she paid more for products than she would have absent defendants' alleged misrepresentations about safety of the products, which allegedly contained dangerous levels of benzene, and she sought damages for her alleged overpayment and to enjoin defendants from distributing such false advertising and misrepresentations. U.S. Const. art. 3, § 2, cl. 1; Cal. Bus. & Prof. Code § 17500 et seq.

Appeal from the United States District Court for the Central District of California, D.C. No. 2:21-cv-04356-MWF-AGR, Michael W. Fitzgerald, District Judge, Presiding

**Attorneys and Law Firms**

Kiley L. Grombacher (argued), Bradley Grombacher LLP, Westlake Village, California; R. Jason Richards, Aylstock Witkin Kreis & Overholtz PLLC, Pensacola, Florida; Sin-Ting M. Liu, Aylstock Witkin Kreis & Overholtz PLLC, Alameda, California; for Plaintiff-Appellant.

Megan McCurdy (argued), Ashley M. Crisafulli, and J. Emmett Logan, Stinson LLP, Kansas City, Missouri; John W. Moticka, Stinson LLP, St. Louis, Missouri; John P. Katerndahl, Gordon Rees Scully Mansukhani LLP, Irvine, California; for Defendants-Appellees.

Before: Ronald Lee Gilman,[*] Ronald M. Gould, and Salvador Mendoza, Jr., Circuit Judges.

## OPINION

MENDOZA, Circuit Judge:

In his 1997 classic spoken-word song, *Everybody's Free (To Wear Sunscreen)*, Baz Luhrmann advises his audience to "Wear sunscreen," telling listeners that it helps prevent skin cancer and that "[t]he long-term benefits of sunscreen have been proved by scientists."[1] Today, Plaintiff Beth Bowen calls Mr. Luhrmann's advice into question, alleging that the Banana Boat sunscreen she purchased was adulterated with benzene, a carcinogen that scientists have determined can cause cancer. Bowen sued six defendants[2] who manufacture, market, and distribute Banana Boat sunscreen, claiming violations of various California statutes, including California's False Advertising Law. Bowen alleges that the Banana Boat bottles she bought contained dangerous levels of benzene, contrary to the Defendants' representations that the products were safe. She also claims that Defendants failed to disclose on the products' labelling that those products contain benzene.

**\*2** Defendants moved to dismiss Bowen's suit pursuant to Federal Rule of Civil Procedure 12(b)(1), raising a factual challenge to Bowen's Article III standing by submitting evidence to undermine Bowen's allegations that small amounts of benzene in sunscreen is unsafe. In response, Bowen submitted evidence of her own to support her allegation that benzene in sunscreen, at any level, is dangerous. The district court considered the parties' competing evidence, as it may when addressing a factual challenge to Article III standing, and ultimately granted Defendants' motion, relying heavily on three documents created by or associated with the Food and Drug Administration ("FDA"). It held that "[i]n light of the [FDA] guideline permitting 2 [parts per million] of benzene in sunscreen, [Bowen] does not allege facts that tend to show a non-speculative increased health risk or actual economic harm" arising from her purchase of Banana Boat products.

On appeal, Bowen argues that the district court erred by failing to construe disputed facts in her favor and prematurely resolving merits issues. We agree. Although a district court faced with a factual challenge to its exercise of jurisdiction may resolve disputed facts as to purely jurisdictional questions, it may not do so when those jurisdictional questions are intertwined with the merits of a claim. When the jurisdictional and merits issues are inseparable, the court must

treat a factual attack on jurisdiction as a motion for summary judgment and construe disputed issues of fact in favor of the nonmoving party. Applying that standard here, Bowen has adequately established an injury in fact for purposes of Article III. So we reverse the district court's dismissal for lack of standing and remand for further proceedings.

## I. Background

### A. Bowen Purchases Banana Boat

Bowen is a Californian who bought several bottles of Banana Boat sunscreen from a Rite Aid pharmacy between 2017 and 2020. Relevant here, she purchased Banana Boat Ultra Sport Sunscreen SPF 100 ("Ultra Sport 100"), Banana Boat Ultra Sport Sunscreen SPF 50 ("Ultra Sport 50"), and Banana Boat Ultra Sport Sunscreen SPF 30 ("Ultra Sport 30"). For the most part, Bowen used the products and then discarded the bottles when empty. But Bowen kept one bottle of Ultra Sport 50, which she purchased and partially used in 2020. She had the contents of that bottle tested at a lab, which revealed that the bottle contained 0.29 parts per million ("ppm") of benzene. Bowen also alleges that a non-party pharmacy—Valisure—tested various Banana Boat products and found that they too contained benzene, including a bottle of Ultra Sport 100, which Valisure found to contain more than 0.1 ppm of benzene.

Relying on various sources, including guidance from the FDA, Bowen alleges that "[b]enzene is a carcinogen that can cause cancer in humans," and that "the application of sunscreen specifically increases the absorption rate of benzene through the skin." Bowen's complaint also cites a statement by Yale University researcher, clinician, and professor of dermatology Dr. Christopher Bunick, who opined that "[t]here is not a safe level of benzene that can exist in sunscreen products," meaning that even trace amounts can be harmful.[3] Dr. Bunick further explained:

> Considering that human skin has a large total surface area (~1.85 m$^2$), and that ~28.5 g of sunscreen is needed per application to properly cover that skin surface, it follows then that there is not a safe level of benzene that can exist in sunscreen products. The total mass of sunscreen required to cover and protect the human body, in single daily application or repeated applications daily, means that

even benzene at 0.1 ppm in a sunscreen could expose people to excessively high nanogram amounts of benzene.

**\*3** Bowen alleges that the risk of sunscreen contamination in Banana Boat has led to public concern and voluntary recalls. On May 25, 2021, for example, "Valisure filed a citizen petition with the [FDA] asking the agency to recall all batches of Banana Boat Sunscreen Products containing 0.1 ppm or more benzene ..., including Banana Boat Ultra Sport Sunscreen SPF 100." In July 2021, consumers filed a putative class action in the District of Connecticut against several of the same parties who are Defendants here, alleging claims for false advertising and unjust enrichment, among others, arising from the defendants' failure to disclose the presence of benzene in Banana Boat products. *See Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040, 2023 WL 2477499 (D. Conn. Mar. 13, 2023). In December 2021, while this case was pending before the district court, non-party Edgewell Personal Care Australia Party Ltd. issued a recall of "all batches" of several Banana Boat sunscreen sprays distributed in Australia because the Therapeutic Good Administration ("TGA")—Australia's equivalent to the FDA—"detected benzene at concentrations between 2.3 ppm and 5.2 ppm in four batches of the ... products supplied in Australia." "Although not every batch of the affected products were tested by the TGA, the company issued the recall 'to reduce the risk to consumers' of using a benzene-contaminated product." Finally, Bowen alleges that on July 29, 2022, Defendant Edgewell Personal Care Company ("EPCC") announced a voluntary recall of a Banana Boat product sold in the United States—Banana Boat Hair and Scalp Sunscreen Spray SPF 30. EPCC stated that the reason for the recall was that "unexpected levels of benzene came from the propellant that sprays the product out of the can." EPCC further stated that "entire batches of the product were recalled on the basis of 'unexpected levels of benzene' found in samples of the product."

### B. Bowen's Lawsuit

Bowen asserts nine California state-law claims in her operative Second Amended Complaint ("SAC").[4] She claims jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Bowen alleges that Defendants (1) failed to indicate on the labels of their products that many Banana Boat products contain benzene, and (2) engaged in false or misleading advertising by stating that Banana Boat products are "safe" when used as directed. With regard to the former,

Bowen alleges that "Defendants wrongfully advertised and sold the Sunscreen Products without any labeling to indicate to consumers that these products contain or may contain benzene." Bowen further alleges that Defendants' misconduct "includes representing in their labels that their Sunscreen Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the Sunscreen Products are adulterated with benzene, a known human carcinogen."

With regard to the latter, Bowen alleges that Defendants engaged in "deceptive, untrue, and misleading advertising by representing that their Sunscreen Products (1) 'provide today's busy family with sun protection without worry when used and reapplied as directed,' (2) offer 'safe and effective sun protection,' and (3) are 'safe for [their] intended use based on the formulation, testing results, and the long history of safe consumer use.' "

Bowen also raises certain allegations explicitly related to Article III standing:[5]

> Plaintiff would have never paid a premium for sunscreen products that contained or were at risk of containing the carcinogen benzene. Standing is satisfied by alleging economic injury. Here, Plaintiff suffered economic injury when she spent money to purchase sunscreen products she would not otherwise have purchased, or [would have] paid less for, absent Defendants' misconduct, as alleged herein.

Bowen further alleges that she "suffered a concrete and particularized injury, because [she was] denied the opportunity to make informed financial and healthcare decisions due to the Defendants' misconduct," and that she "instead unwittingly purchased and used sunscreen products [she] would [ ] not have otherwise purchased, or [would have] paid less for, absent Defendants' misconduct."

### C. Motion to Dismiss the SAC and the District Court's Order

**\*4** Defendants moved to dismiss the SAC on several bases: Rule 12(b)(1), for lack of Article III standing; Rules 8 and 12(b)(6), for failure to state a claim; and Rule 9(b), for failure to plead her allegations grounded in fraud with particularity. Defendants argued that Bowen's SAC should be dismissed for several distinct reasons, but the district court considered only one—whether Bowen has Article III standing to invoke the jurisdiction of the federal courts.

The district court concluded that, "[i]n light of the [FDA] guideline permitting 2 ppm of benzene in sunscreen, Plaintiff does not allege facts that tend to show a non-speculative increased health risk or actual economic harm." To reach that conclusion, the district court conducted a searching, three-part analysis with respect to the bottle of Ultra Sport 50 that Bowen purchased, which contained 0.29 ppm of benzene. First, it looked outside the SAC to documents produced or relied upon by the FDA, and it determined that they "impl[y] that manufacturers like Defendants may continue to release products that are adequately tested and contain less than 2 ppm of benzene." The district court next considered whether Bowen had established standing under an "increased health risk" theory. The court reasoned that Bowen's allegations, and the numerous sources cited in the SAC, "do not establish that .29 ppm of benzene in sunscreen creates a credible or substantial risk of [physical] harm." Finally, the district court considered whether Bowen had standing under an "economic loss" theory. The court weighed Defendants' evidence related to the amount of benzene that the FDA deems tolerable in sunscreen products against Bowen's evidence related to the harmful nature of benzene, and it held that Bowen's "alleged economic harm"—*i.e.*, that she paid more than she would have had she known that Banana Boat contained benzene —"is premised on the speculative notion that the presence of 0.29 ppm of benzene, or any potential presence of benzene, makes the sunscreen unsafe."

Bowen timely appealed. She argues that the district court erred in its analysis under Rule 12(b)(1) by failing to construe disputed facts in her favor. Had the district court done so, Bowen contends, it would have found that she has Article III standing under both an increased health-risk theory and an economic-injury theory.

### II. Jurisdiction & Standard of Review

 **[1]** We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. "We review a district court's dismissal under Rule 12(b)(1) for lack of standing de novo." *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1209 (9th Cir. 2022); *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1022 (9th Cir. 2023) ("The existence of a case or controversy is a question of law we review de novo."), *cert. denied*, ––– U.S. ––––, 144 S. Ct. 190, 217 L.Ed.2d 77 (2023).

2024 WL 4352496

## III. Discussion

**[2]   [3]   [4]   [5]**   To satisfy Article III's case or controversy requirement, a plaintiff must establish that she has standing to invoke the jurisdiction of the federal courts. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021). To do so, she "must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Here, the district court treated Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as a factual attack on standing,[6] considered evidence outside of the pleadings, and resolved disputed issues of fact in favor of Defendants in determining that Bowen lacked standing. Bowen concedes, as she must, that the district court was permitted to consider evidence outside the pleadings. But she argues that the district court erred by failing to construe disputed questions of fact, which implicate the merits of her claims, in her favor. In response, Defendants contend that the relevant standard permitted the district court to resolve disputed issues of fact because this is not a case where a federal "statute provides the basis for both the court's subject matter jurisdiction and plaintiff's claim for relief."

**\*5**  Bowen's appeal therefore raises two issues. The first is a threshold question: did the district court err by resolving disputed issues of fact in its Rule 12(b)(1) analysis? The answer to that first question informs the answer to the second: has Bowen shown Article III standing sufficient to withstand Defendants' Rule 12(b)(1) motion? We address each in turn.

### A. Intertwining of Standing and the Merits

**[6]   [7]   [8]**   The rules governing a factual challenge to standing under Rule 12(b)(1) provide that once a defendant has "contested 'the truth of the plaintiff['s] factual allegations,' the [plaintiff] ha[s] the burden to 'support [her] jurisdictional allegations with 'competent proof.' " *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).[7] If the "existence of jurisdiction turn[s] on disputed factual issues," and those "jurisdictional disputes [are] not intertwined with the merits of the claim," then "it [falls] to the district court to 'resolve those factual disputes itself.' " *Id.* (quoting *Leite*, 749 F.3d at 1121–22, 1122 n.3).

Conversely, when jurisdictional issues are "intertwined with an element of the merits of the plaintiff's claim," the court must treat the motion like a motion for summary judgment and "leave the resolution of material factual disputes to the trier of fact." *Leite*, 749 F.3d at 1122. Accordingly, we must first answer the question posed by *Friends of the Earth*: are Bowen's allegations relating to standing "separable from the merits of the case"—such that the district court was free to "resolv[e] factual disputes if necessary"—*Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 n.2 (9th Cir. 2023), or are they "intertwined with an element of the merits of the plaintiff's claim," such that the district court was required to "leave the resolution of material factual disputes to the trier of fact," *Leite*, 749 F.3d at 1122?

**[9]   [10]   [11]**   As we reasoned in *Safe Air for Everyone*, "jurisdictional issue[s] and substantive issues" are deemed "intertwined [when] the question of jurisdiction is dependent on the resolution of factual issues going to the merits." 373 F.3d at 1039. We have concluded that merits issues and jurisdictional issues are intertwined—and thus, that the district court may not resolve disputed factual issues on a factual challenge to jurisdiction—under several circumstances. "Such an intertwining of jurisdiction and merits may occur when," for example, "a party's right to recovery rests upon the interpretation of a federal statute that provides both the basis for the court's subject matter jurisdiction and the plaintiff's claim for relief." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1094 (9th Cir. 2008) (citing *Safe Air for Everyone*, 373 F.3d at 1039). Jurisdiction and substance might also be intertwined when the claim at issue arises under the Constitution. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). And, in the context of a motion to remand to state court a case involving federal-officer removal jurisdiction, the district court may not resolve a "factual dispute material to [federal-officer] jurisdiction [that] is intertwined with an element of the plaintiff's claim." *DeFiore v. SOC LLC*, 85 F.4th 546, 553 (9th Cir. 2023).

**\*6**  We have considered on several occasions, though not expressly decided, whether a district court may resolve disputed issues of fact relating to Article III standing when a plaintiff's allegations concerning standing are intertwined with allegations concerning an element of her claim. In *Jones*, for example, we noted that resolving "Article III standing issue[s] under the guise of a Rule 12(b)(1) motion, rather than a summary-judgment motion under Rule 56, might be inappropriate if those jurisdictional issues are 'intertwined

with the merits.' " 74 F.4th at 1057 n.2. Similarly, in *Wood v. City of San Diego*, we considered the plaintiff's argument that, because the merits of her claim were intertwined with Article III standing issues, a "jurisdictional finding of genuinely disputed facts" was inappropriate. 678 F.3d 1075, 1084 (9th Cir. 2012) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). But we left the resolution of that issue for another day because the plaintiff's case was subject to dismissal regardless of the applicable standard. *Id.* at 1085. Likewise, in *Friends of the Earth*, we implicitly suggested that when the merits of a plaintiff's claims are intertwined with an Article III standing issue, the district court may not resolve disputed issues of fact. *See* 992 F.3d at 944. But we did so by holding the inverse: "Importantly, because the jurisdictional disputes [as to standing] were *not intertwined* with the merits of the claim[,] ... it fell to the district court to 'resolve [the] factual disputes itself.' " *Id.* (quoting *Leite*, 749 F.3d at 1121–22, 1122 n.3) (emphasis added).

**[12]  [13]** Accordingly, we conclude that the applicable standard for a Rule 12(b)(1) motion that raises a factual challenge to Article III standing tracks the standard set forth in cases like *Williston Basin*, 524 F.3d at 1094; *Roberts*, 812 F.2d at 1177; and *DeFiore*, 85 F.4th at 553.[8] As with a motion for summary judgment, when a court is faced with a factual attack on standing pursuant to Rule 12(b)(1), the court "must leave the resolution of material factual disputes to the trier of fact when the issue of [standing] is intertwined with an element of the merits of the plaintiff's claim." *Leite*, 749 F.3d at 1122 (citing *Safe Air for Everyone*, 373 F.3d at 1039–40).[9]

### 1. Bowen's Appeal

**\*7** We turn now to whether Bowen's appeal raises intertwined standing and merits issues. In making that assessment, we consider whether "the question of [standing] is dependent on the resolution of factual issues going to the merits of [the] action." *See Safe Air for Everyone*, 373 F.3d at 1039 (citation and internal quotation marks omitted). Here, Bowen alleges that she suffered an economic injury for purposes of Article III standing "when she spent money to purchase sunscreen products [that] she would not otherwise have purchased, or [would have] paid less for, absent Defendants' misconduct." And she alleges that Defendants' misconduct includes both their failure to indicate on their products' ingredient lists that many of them contain benzene and their misleading advertising, which states that Banana Boat products are "safe" to use as directed. In essence,

she seeks a remedy for an economic injury, based on actual fraud and fraud by omission.

**[14]  [15]  [16]** Where, as here, plaintiffs in a false-advertising case " 'contend that [they] paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)). We sometimes call this an "overpayment theory." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("[O]verpayment is a viable theory of economic injury."). A plaintiff proceeding on an overpayment theory of Article III standing typically must "allege that [the defendant] made false representations—or actionable non-disclosures—about [the product]." *Id.* at 707.[10] Of course, whether Defendants made "false representations" or "actionable non-disclosures," *id.*, is also a merits issue central to Bowen's false-advertising claim. After all, one of the elements that Bowen must establish to prevail on a claim under California's FAL is an "economic injury"—*i.e.*, "that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she 'would not have purchased the goods in question absent this misrepresentation.' " *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018) (quoting *Hinojos*, 718 F.3d at 1105).[11]

**[17]** Accordingly, there is a clear overlap between Bowen's asserted theory of Article III injury and the "economic injury" element of her FAL claim. And Bowen's allegations relating to standing are not "separable from the merits of the case," such that the district court was free to "resolv[e] factual disputes." *See Jones*, 74 F.4th at 1057 n.2. To resolve the Article III standing issue—whether Defendants "made false representations[,] or actionable non-disclosures[,] about [the product]," *McGee*, 982 F.3d at 707—would necessarily require us to resolve the merits issue—whether Defendants' representations and non-disclosures are "actionable" under California law. Because "the [standing] issue and substantive issues are so intertwined," resolution of "genuinely disputed facts is inappropriate." *See Safe Air for Everyone*, 373 F.3d at 1039; *cf Friends of the Earth*, 992 F.3d at 944. So we must assess Defendants' motion as we would a motion for summary judgment, and "leave the resolution of material factual disputes [regarding Article III standing] to the trier of fact." *Leite*, 749 F.3d at 1122.

**B. Whether Bowen Has Established Article III Standing**

**\*8**  Applying a summary judgment standard to Defendants' Article III challenge, we conclude that genuine disputes of material fact render dismissal on standing grounds improper. The district court considered only the first element of Article III standing—whether Bowen had established an injury in fact. It answered "no" even though Bowen alleged that "she spent money to purchase sunscreen products she would not otherwise have purchased, or [would have] paid less for, absent Defendants' misconduct[.]" The district court held that "[i]n light of the [FDA] guideline permitting 2 ppm of benzene in sunscreen, Plaintiff does not allege facts that tend to show ... actual economic harm." The district court's decision suffers from two errors. First, the district court mistakenly required Bowen to show that Banana Boat was noncompliant with FDA guidelines in order to establish injury under an economic-harm theory. Second, to reach the conclusion that 0.29 ppm of benzene in sunscreen is "safe," the district court improperly weighed disputed evidence. We address each error in turn.

First, Bowen's theory of injury in fact finds ample support in our precedent. In *Hinojos*, we considered whether a plaintiff who alleged claims under California's UCL, FAL, and CLRA had Article III standing. 718 F.3d at 1102. The *Hinojos* plaintiff alleged that he "bought merchandise from a Kohl's Department Store that he would not have purchased had he not been misled by advertisements stating that the merchandise was marked down from a fictitious 'original' or 'regular' price." *Id.* at 1101. We found that "[t]here is no difficulty in this case regarding Article III injury in fact" because "when, as here, '[p]laintiffs contend that [they] paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so'[,] they have suffered an Article III injury in fact." *Hinojos*, 718 F.3d at 1104 n.3 (quoting *Mazza*, 666 F.3d at 595); *see also Mazza*, 666 F.3d at 595 (holding at the motion for class certification stage that "[t]o the extent that class members were relieved of their money by Honda's deceptive conduct—as plaintiffs allege—they have suffered an injury in fact" for purposes of Article III standing (internal quotation marks and citation omitted)).

 **[18]**  Here, Bowen alleges that when "purchasing the sunscreen products, [she] reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer that the sunscreen products were properly manufactured, free from defects, safe for their intended use, and not adulterated or misbranded."

Bowen "relied on these representations and warranties in deciding to purchase the sunscreen products manufactured by Defendants, and these representations and warranties were part of the basis of the bargain." But the bottle of Ultra Sport 50 that Bowen purchased in 2020 contained the alleged carcinogen benzene. And although Bowen discarded the Ultra Sport 100 bottle that she purchased without testing it, she alleges that Ultra Sport 100 has been tested by Valisure and found to contain at least 0.1 ppm of benzene. Had Bowen "known that any amount of benzene was or risked being contained in the sunscreen products she purchased, she would not have purchased and used the products at all or would have paid significantly less for them." Finally, Bowen alleges that she "suffered economic injury when she spent money to purchase sunscreen products she would not otherwise have purchased, or paid less for, absent Defendants' misconduct, as alleged herein." Under *Hinojos* and *Mazza*, these allegations outline a theory of economic injury that qualifies as an injury in fact under established Article III standing caselaw. *Hinojos*, 718 F.3d at 1104 n.3; *Mazza*, 666 F.3d at 595; *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (quoting *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 108, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014) ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III....")).

 **\*9**  The district court cited *Hinojos* but found it materially distinguishable. The court characterized the standing analysis in *Hinojos* as follows: "In *Hinojos*, the plaintiff alleged he suffered economic harm because he would not have purchased merchandise if not for the inflated 'regular' price[;] it is not hypothetical that the fictitiously high 'regular' prices made the merchandise seem like more a bargain." The district court then attempted to juxtapose Bowen's alleged injury: "Unlike the concrete premise[ ] for the economic harm[ ] in ... *Hinojos*, Bowen's alleged economic harm is premised on the speculative notion that the presence of 0.29 ppm of benzene, or any potential presence of benzene, makes the sunscreen unsafe." But the distinction drawn by the district court is immaterial to the standing analysis under Bowen's economic-harm theory of injury. The district court relies on the mistaken premise that Bowen's theory of Article III injury requires her to prove that benzene in the quantity found in the bottle of Ultra Sport 50 that she purchased—0.29 ppm—is unsafe. That is not the case. Instead, Bowen need prove only that she "paid more for [the product] than [she] otherwise would have paid, or bought it when [she] otherwise would not have done so," *Hinojos*, 718 F.3d at 1104 n.3, absent Defendants' "false

2024 WL 4352496

representations—or actionable non-disclosures—about [the product,]" *McGee*, 982 F.3d at 706.

 **[19]** Second, under Bowen's theory of standing, the evidence presented by the parties gives rise to disputes of fact with respect to whether Defendants made actionable misrepresentations about Banana Boat sunscreen. In finding that Bowen failed to establish a non-speculative injury, the district court gave controlling weight to three documents: (1) a document produced by the International Conference on Harmonization ("ICH") titled "*Impurities: Guidelines for Residual Solvents Q3c*" ("ICH Q3C"); (2) an FDA news release from December 2021 titled "*FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs*" ("FDA Alert"); and (3) the Frequently Asked Questions section of the FDA's website —specifically, the page titled "*Frequently Asked Questions on Benzene Contamination in Drugs*" ("FDA FAQ"). Even without considering Bowen's countervailing evidence, those documents do not resolve the question of whether benzene is actually unsafe at any level. Those sources merely highlight the FDA's view that benzene "*should not be employed* in the manufacture of ... drug products because of their unacceptable toxicity or their deleterious environmental effect. However, *if their use is unavoidable* in order to produce a drug product with a significant therapeutic advance, then *their levels should be restricted*" to 2 ppm, "unless otherwise justified." (emphasis added).

The FDA is not stating, as Defendants argue and the district court held, that products containing less than 2 ppm of benzene are safe, full stop. Characterizing such products as safe runs counter to the agency's caveat-laden guidance. Instead, the FDA has expressed the view that benzene should not be used in products unless its "use is unavoidable ... to produce a drug with a significant therapeutic advance" or "unless otherwise justified"; the FDA FAQ posted to the FDA's website suggests that "[d]rug manufacturers with a risk for benzene contamination should test their drugs accordingly and should not release any drug product batch that contains benzene above 2 parts per million (ppm)"; and that manufacturers "should contact FDA using the information provided in FDA's [A]lert if their testing reveals benzene in a product."

Accordingly, there is inconsistency even within the documents put forth by Defendants and relied upon by the district court: on the one hand, the FDA tells manufacturers not to *deliberately* put benzene in drugs unless it is

"unavoidable" because of its "unacceptable toxicity;" on the other hand, the FDA advises manufacturers that if their drugs become *contaminated* with benzene, they should not release batches with more than 2 ppm benzene. Hardly a ringing endorsement for the proposition that products with less than 2 ppm benzene are "safe." The FDA guidance does not establish as a matter of law that sunscreen with benzene levels under 2 ppm is safe for human use.[12]

 **\*10** Bowen submitted evidence in opposition to Defendants' motion to dismiss that raises further disputes of material fact as to whether Defendants' assertion that Banana Boat products are "safe" is a "misrepresentation." *See McGee*, 982 F.3d at 707. Chiefly, Bowen proffered Dr. Bunick's opinion that "there is not a safe level of benzene that can exist in sunscreen products," and "even benzene at 0.1 ppm in a sunscreen could expose people to excessively high nanogram amounts of benzene." And although a plaintiff typically need not support her allegations with evidence at the pleading stage, Bowen did so here by providing evidence that the Ultrasport 50 bottle she bought contained 0.29 ppm benzene and that the Ultrasport 100 product she bought was tested by a third-party and contained more than .1 ppm benzene. The district court held that "Dr. Bunick's statement that 0.1 ppm of benzene '*could* expose people to excessively high amounts' creates only a speculative risk of harm, especially in light of the FDA's concentration limit of 2 ppm of benzene." But it is not the district court's role to weigh evidence that implicates both jurisdictional and merits issues; "contested evidence is viewed in the light most favorable to the nonmoving party." *Johnson v. Barr*, 79 F.4th 996, 999 (9th Cir. 2023). In this case, that is Bowen.

When consumers like Bowen enter the marketplace, they have options. Faced with two sunscreens in the skincare aisle of a pharmacy—one with benzene, the other with no benzene —it is perfectly reasonable that the consumer would avoid the product containing benzene, as Bowen alleges that she would have absent Defendants' alleged false advertising. The FDA tells manufacturers not to put benzene in drugs unless doing so is unavoidable. The Valisure letter that Bowen submitted quotes Dr. Bunick as opining that "there is not a safe level of benzene that can exist in sunscreen products," and "even benzene at 0.1 ppm in a sunscreen could expose people to excessively high nanogram amounts of benzene." And Defendant EPCC has voluntarily recalled batches of Banana Boat sunscreen sold in the United States that the company asserted contained "trace"—though undisclosed— amounts of benzene.[13] In light of this record evidence, factual

2024 WL 4352496

disputes remain as to the truthfulness of the Defendants' representations that the Banana Boat products were "safe," and as to whether their omission of benzene from the bottles' labeling were misrepresentations. Accordingly, the district court erred in dismissing Bowen's SAC for failure to establish an injury in fact for purposes of Article III standing.[14]

### 1. Article III Causation and Redressability

 **[20]** Although the district court addressed only the first element of standing—injury in fact—"we have an independent obligation to consider" standing sua sponte. *Am. C.L. Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) (internal quotation marks and citation omitted). So we consider whether Bowen has satisfied the second and third elements of Article III standing: "(ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423, 141 S.Ct. 2190.

 **\*11** **[21]** Bowen alleges that Defendants caused her injury, in part, through their alleged misrepresentation that the Banana Boat products she purchased are safe for their intended use. As set forth above, whether the Banana Boat bottles that Bowen purchased contained unsafe levels of benzene is a disputed issue of fact. Bowen cites Dr. Bunick's opinion that "[t]here is not a safe level of benzene that can exist in sunscreen products." Accordingly, whether Defendants "made false representations" about the safety of their products that "likely caused" Bowen's economic injury is a disputed question of fact, *see McGee*, 982 F.3d at 707, and Bowen has met her burden to satisfy the causation element of Article III standing at this juncture.

 **[22]** Bowen has also met her burden to establish redressability. Defendants did not submit evidence in support of their Rule 12(b)(1) motion challenging redressability, and we therefore consider whether Bowen has established that element of standing under the 12(b)(6) rubric, which we apply to a facial challenge to jurisdiction. *Leite*, 749 F.3d at 1121. Bowen plausibly alleges that she paid more for the Banana Boat products than she would have absent Defendants' alleged misconduct, and she seeks damages for that alleged overpayment. Bowen also alleges that she intends to purchase Banana Boat products in the future, but only if they "are unadulterated and meet the advertising claims." She further seeks to enjoin the Defendants "from distributing such false advertising and misrepresentations" as is alleged in the SAC.[15] Bowen has therefore established that her injury "would likely be redressed by judicial relief" at this stage of the litigation. *TransUnion LLC*, 594 U.S. at 423, 141 S.Ct. 2190.

### IV. Conclusion

For the foregoing reasons, we **REVERSE** the district court's order dismissing Bowen's suit for lack of Article III standing, and **REMAND** for further proceedings consistent with this opinion.

### All Citations

--- F.4th ----, 2024 WL 4352496

### Footnotes

\*      The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

1      Baz Luhrmann, *Everybody's Free (To Wear Sunscreen), on* Something for Everybody (Capitol Records 1997). Luhrmann's song popularized the words of journalist Mary Schmich from her essay in the Chicago Tribune. *See* Mary Schmich, Opinion, *Advice, Like Youth, Probably Just Wasted on the Young*, Chi. Trib., June 1, 1997, https://www.chicagotribune.com/1997/06/01/advice-like-youth-probably-just-wasted-on-the-young-2/.

2      The defendants are Energizer Holdings, Inc., Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell Personal Care, LLC, Playtex Products, Inc., and Sun Pharmaceuticals, LLC (collectively, "Defendants").

3      Bowen quoted Dr. Bunick's statements in her complaint and submitted a letter from third-party Valisure, LLC, which also contains Dr. Bunick's statements.

4    These claims are: (1) violation of California's Unfair Competition Law ("UCL"); (2) violation of California's False Advertising Law ("FAL"); (3) violation of the California Consumer Legal Remedies Act; (4) unjust enrichment/quasi contract; (5) negligent misrepresentation/omission; (6) breach of express warranty; (7) breach of implied warranty; (8) strict product liability under a failure to warn theory; and (9) strict product liability under a manufacturing defect theory.

5    The district court had previously dismissed Bowen's first amended complaint for lack of standing, with leave to amend.

6    A factual attack on jurisdiction "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). A "facial attack," by contrast "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.' " *Id.* (quoting *Safe Air for Everyone*, 373 F.3d at 1039).

7    Facial challenges, by contrast, are adjudicated under the familiar Rule 12(b)(6) standard. *Leite*, 749 F.3d at 1121.

8    In so holding, we join the Tenth and Eleventh Circuits. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 874 (10th Cir. 2020) ("We find standing intertwined with the merits when we cannot resolve a jurisdictional question without addressing the merits of a substantive claim."); *PDVSA US Litig. Tr. v. Lukoil Pan Ams. LLC*, 991 F.3d 1187, 1192 (11th Cir. 2021) (noting, on appeal from Rule 12(b)(1) challenge to Article III standing, that "[w]hen the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject-matter jurisdiction").

9    We note that this rule is rooted in Supreme Court precedent involving "claim[s] under the constitution or federal statutes." *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). But the justification for this rule naturally extends to cases, like the present one, where a plaintiff invokes the diversity jurisdiction of the federal courts to resolve state-law claims. In *Bell v. Hood*, the Court highlighted the importance of preserving a federal forum for the vindication of federal rights, and it held that when a plaintiff sues "directly under the Constitution or laws of the United States, the federal court, but for [limited] exceptions ..., must entertain the suit." 327 U.S. at 681–82, 66 S.Ct. 773. *Bell* did not consider whether, in a case where the plaintiff invokes federal jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a district court's obligation to "entertain the suit" is equally strong. But we have long held that "the district court has a 'virtually unflagging' obligation to exercise jurisdiction" once it attaches, regardless of whether the plaintiff invokes the court's diversity jurisdiction under § 1332 or federal-question jurisdiction under § 1331. *See Marlowe v. State Farm Fire & Cas. Co.*, 145 F.3d 1339 (9th Cir. 1998). The obligation of the federal courts to exercise jurisdiction when it attaches is no less important when a plaintiff invokes the federal court's diversity jurisdiction, and we therefore find no basis to apply differing standards to factual attacks on Article III standing in cases when, as here, the court's subject-matter jurisdiction stems from § 1332.

10   In *McGee*, we noted that it is an open question whether the plaintiff's theory of Article III standing—that "a plaintiff may rely on an overpayment theory of economic injury in a case that does not involve misrepresentations"—was viable and found that it "appears to find some support" in our precedent and Third Circuit precedent. 982 F.3d at 707 (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), and *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac. & Liab. Litig.*, 903 F.3d 278, 290 & n.15 (3d Cir. 2018)). But we need not answer the question left open in *McGee* today because Bowen alleges that Defendants made misrepresentations with respect to Banana Boat and benzene. *Cf. McGee*, 982 F.3d at 707.

11   For the avoidance of doubt, we note that whether a plaintiff has satisfied the economic-injury element of a substantive claim under California's FAL is a distinct inquiry from whether a plaintiff satisfies Article III's standing requirements. A plaintiff's failure to satisfy the strictures of California law is by no means determinative of whether a plaintiff has satisfied the strictures of Article III.

12   The district court relied on the FDA Alert and FDA FAQ not as sources of federal law preempting Bowen's state-law claims, but instead as factual evidence that benzene levels under 2 ppm in sunscreen is safe. This was wise, as neither document has the force of federal law: "[I]t cannot be disputed that the FAQ section of a federal website is not a source of 'federal law,' nor would an interpretation announced there be subject to deference by a court." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1073 (9th Cir. 2014) (Christen, J., concurring).

2024 WL 4352496

13    We note that, although Bowen did not provide evidence to support the allegation that the Ultrasport 30 she bought, used, and discarded contained benzene, she was not required to do so to withstand Defendants' motion to dismiss. Because Defendants did not produce evidence showing that the Ultra Sport 30 *did not* contain benzene, we review the issue of whether the Ultra Sport 30 contained benzene under the rubric for a facial challenge to jurisdiction, *i.e.*, the Rule 12(b)(6) standard. *Leite*, 749 F.3d at 1121. And, in light of her allegations about the other Banana Boat spray products she purchased that contained benzene and allegations regarding Defendant EPCC's recall of another SPF 30 Banana Boat product due to "unexpected levels of benzene [in] the propellant that sprays the product out of the can," Bowen has plausibly alleged that the Ultrasport 30 bottle that she purchased and used contained benzene.

14    Because Bowen has established an injury in fact under an economic-harm theory, we need not, and do not, address Bowen's argument that the district court erred in determining that she failed to establish an injury in fact under a physical-harm theory.

15    We note the Defendants' assertion that "Plaintiff has no standing to prosecute claims on the basis of products she did not purchase," and they contend that Plaintiff should not be allowed to pursue an injunction with respect to products that she did not buy. We decline Defendants' invitation to prejudge these issues.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.