**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARCEANN DUNNING, AMBER LATIF, and JANET BEAUDOIN, individually and on behalf of all others similarly situated,

                Plaintiffs,

            -against-

SUPERGOOP LLC,

                Defendant.

Index No. 1:23-cv-11242 (JPC)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SUPERGOOP LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

LEGAL STANDARDS ....................................................................................... 2

ARGUMENT ....................................................................................................... 3

I.    Plaintiffs Fail To "Meaningfully Link" Their Testing Results To Their Purchased Products, And Thus Lack Article III Standing. ................................... 3

II.    Plaintiffs' Claims Are Preempted Because They Seek To Impose Requirements Beyond Federal Law. ........................................................................ 7

III.    Plaintiff's State Statutory Claims Are Foreclosed By Safe Harbor Rules. .......... 10

IV.    Plaintiffs' Equitable Tolling Allegations Fail to Meet the Rule 9(b) Heightened Pleading Standards. ......................................................................... 11

V.    Plaintiffs' Unjust Enrichment Claims Must Be Dismissed as Duplicative. ......... 13

    A.    The New York Claims Must Be Dismissed as Duplicative of the State Consumer Protection Law and Express Warranty Claims. ............... 13

    B.    The California and Michigan Unjust Enrichment Claims Must Be Dismissed As Duplicative of the Express Warranty Claims. ................... 14

VI.    Plaintiffs' Express Warranty Claims Must Be Dismissed. .................................. 14

    A.    Plaintiffs Fail to Plead the Requisite Privity Relationship for Their Breach of Express Warranty Claims. ..................................................... 14

    B.    Plaintiffs Have Failed to Sufficiently Allege Timely Pre-Suit Notice. ..................................................................................................... 15

VII.    The New York Plaintiff's Claims Fail. .............................................................. 16

    A.    Plaintiff Has Failed to Sufficiently Plead Her New York GBL Claims. ................................................................................................... 16

VIII.    The California Claims Fail. ............................................................................... 18

    A.    Plaintiff Has Failed to Sufficiently Plead that She Suffered an Economic Injury In Fact As Required By California Law. ................... 18

    B.    Plaintiff Has Failed to Plead the Requisite Fraudulent Conduct Under Rule 9(b). ...................................................................................... 19

    C.    Plaintiff Has Failed to Sufficiently Plead "Unlawful" Conduct Under the UCL. ........................................................................................ 20

    D.    Plaintiff Has Failed to Sufficiently Plead "Unfair" Conduct Under the UCL. ................................................................................................... 22

IX.    The Florida Claims Must Be Dismissed. .......................................................... 23

    A.    Plaintiff Alleges No Improper Acts that Occurred in Florida. ................. 23

# TABLE OF CONTENTS
(continued)

**Page**

       B.      Plaintiff Suffered No Actual Injury, and Thus Has No Standing. ........... 24

       C.      Plaintiff's FDUTPA Claim is Otherwise Insufficiently Pleaded............ 24

X.      The Michigan Plaintiff's Claims Must Be Dismissed. ....................................... 25

CONCLUSION....................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Dixon*,
 480 F.3d 636 (2d Cir. 2007)................................................................................................11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)........................................................................................................3, 9

*Ashour v. AriZona Beverages USA LLC*,
 2022 WL 14038713 (S.D.N.Y. Oct. 24, 2022) ......................................................................15

*Barreto v. Westbrae Nat., Inc.*,
 518 F. Supp. 3d 795 (S.D.N.Y. 2021) ..................................................................................18

*Battle v. Taylor James, LLC*,
 607 F. Supp. 3d 1025 (C.D. Cal. 2022) ................................................................................18

*Belcastro v. Burberry Ltd.*,
 2017 WL 744596 (S.D.N.Y. Feb. 23, 2017).........................................................................24

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..........................................................................................................3

*Braynina v. TJX Companies, Inc.*,
 2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016) ......................................................................16

*Breeze Smoke LLC v. Yatin Enterprises Inc.*,
 2023 WL 3070893 (W.D. Mich. Apr. 25, 2023) ...................................................................10

*Byrd v. United States*,
 584 U.S. 395 (2018)..........................................................................................................2

*Calcano v. Swarovski N. Am. Ltd.*,
 36 F.4th 68 (2d Cir. 2022) ..................................................................................................2

*Cipollone v. Liggett Grp., Inc.*,
 505 U.S. 504 (1992)..........................................................................................................7

*City of Long Beach v. Total Gas & Power N. Am., Inc.*,
 465 F. Supp. 3d 416, 448 (S.D.N.Y. 2020), *aff'd*, 2021 WL 5754295 (2d Cir.
 Dec. 3, 2021)....................................................................................................................19

*Colpitts v. Blue Diamond Growers*,
 527 F. Supp. 3d 562 (S.D.N.Y. 2021).............................................................................16, 17

*Cosmas v. Hassett*,
 886 F.2d 8 (2d Cir.1989)...................................................................................19

*Critcher v. L'Oreal USA, Inc.*,
 959 F.3d 31 (2d Cir. 2020)............................................................................1, 9

*De Sole v. Knoedler Gallery, LLC*,
 974 F. Supp. 2d 274 (S.D.N.Y. 2013)..............................................................12

*Doe v. CVS Pharmacy, Inc.*,
 982 F.3d 1204 (9th Cir. 2020) .....................................................................22, 23

*Duchimaza v. Niagara Bottling, LLC*,
 619 F. Supp. 3d 395 (S.D.N.Y. 2022).............................................................16

*Duronio v. Merck & Co.*,
 2006 WL 1628516 (Mich. Ct. App. June 13, 2006) .........................................10

*Dwyer v. Allbirds, Inc.*,
 598 F. Supp. 3d 137 (S.D.N.Y. 2022)...............................................................8

*Evolution Fast Food One, LP v. HVFG, LLC*,
 2024 WL 1054362 (S.D.N.Y. Mar. 11, 2024) ........................................19, 20, 21

*Fishon v. Peloton Interactive, Inc.*,
 2022 WL 179771 (S.D.N.Y. 2022)...................................................................25

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
 406 F. Supp. 3d 618 (E.D. Mich. 2019).............................................................14

*Goldstein v. Walmart, Inc.*,
 637 F. Supp. 3d 95 (S.D.N.Y. 2022)..................................................................9

*Green v. SweetWorks Confections, LLC*,
 2019 WL 3958442 (S.D.N.Y. Aug. 21, 2019) ...................................................11

*Guerrero v. Target Corp.*,
 889 F. Supp. 2d 1348 (S.D. Fla. 2012) ..............................................................24

*Hache v. Damon Corp.*,
 2008 WL 912434 (M.D. Fla. Apr. 1, 2008)........................................................24

*Hadley v. Kellogg Sales Co.*,
 243 F. Supp. 3d 1074 (N.D. Cal. 2017) .........................................................21, 22

*Hakim-Daccach v. Knauf Int'l GmbH*,
 2017 WL 5634629 (S.D. Fla. Nov. 22, 2017).....................................................23

*Hansen v. Newegg.com Americas, Inc.*,
    236 Cal. Rptr. 3d 61 (Cal. App. Ct. 2018) ..............................................................18

*Hertz Corp. v. Accenture LLP*,
    2019 WL 5537997 (S.D.N.Y. 2019) ........................................................................24

*Hicks v. L'Oreal U.S.A., Inc.*,
    2023 WL 6386847 (S.D.N.Y. Sept. 30, 2023) (*Hicks I*) ........................................3, 8

*Hicks v. L'Oreal U.S.A., Inc.*,
    2024 WL 4252498 (S.D.N.Y. Sept. 19, 2024) (*Hicks II*) ......................................3, 5

*Horton v Woodman Labs, Inc.*,
    2014 WL 1329355 (M.D. Fla. Apr. 2, 2014) .............................................................25

*Irvine v. Kate Spade & Co.*,
    2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017) ..........................................................18

*John v. Whole Foods Mkt. Grp., Inc.*,
    858 F.3d 732 (2d Cir. 2017) ................................................................................5, 6

*Kell v. Lily's Sweets, LLC*,
    2024 WL 1116651 (S.D.N.Y. Mar. 13, 2024) .......................................................5, 6

*King v. Nat'l Gen. Ins. Co.*,
    2023 WL 8879261 (N.D. Cal. Dec. 22, 2023) ..........................................................22

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012) ....................................................................................12

*Kominis v. Starbucks Corp.*,
    2023 WL 6066199 (S.D.N.Y. Sept. 18, 2023) ........................................13, 14, 19, 20

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991) ......................................................................................8

*Kuenzig v. Hormel Foods Corp.*,
    505 F. App'x 937 (11th Cir. 2013) ...........................................................................11

*Kussy v. Home Depot U.S.A., Inc.*,
    2006 WL 3447146 (E.D.Mich.2006) .......................................................................25

*Kyszenia v. Ricoh USA, Inc.*,
    583 F. Supp. 3d 350 (E.D.N.Y. 2022) .....................................................................12

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ......................................................................................8

*LaFaro v. N.Y. Cardiothoracic Grp., PLLC*,
   570 F.3d 471 (2d Cir. 2009).............................................................................3

*Landstar Express Am., Inc. v. Nexteer Auto. Corp.*,
   900 N.W.2d 650 (Mich. Ct. App. 2017) .........................................................13

*Liss v. Lewiston-Richards, Inc.*,
   732 N.W.2d 514 (Mich. 2007)........................................................................10

*Lombardo v. Johnson & Johnson Consumer Companies, Inc.*,
   124 F. Supp. 3d 1283 (S.D. Fla. 2015) ...........................................................24

*Lurenz v. Coca-Cola Co.*,
   2024 WL 2943834 (S.D.N.Y. June 10, 2024) ...................................................5

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)..............................................................................2

*MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 101 (2d Cir. 2023) ..............14, 15

*Meserole v. Sony Corp. of Am.*,
   2009 WL 1403933 (S.D.N.Y. May 19, 2009) ..................................................20

*Meyer v. Sprint Spectrum L.P.*,
   200 P.3d 295 (Cal. 2009) ................................................................................18

*Milo v. Galante*,
   2011 WL 1214769 (D. Conn. Mar. 28, 2011) .................................................12

*Montgomery v. Kraft Foods Glob., Inc.*,
   2012 WL 6084167 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304 (6th Cir.
   2016) ..........................................................................................................14, 15

*Onaka v. Shiseido Americas Corp.*,
   2024 WL 1177976 (S.D.N.Y. Mar. 19, 2024) ................................................4, 5

*In re OnStar Cont. Litig.*,
   278 F.R.D. 352 (E.D. Mich. 2011) .................................................................25

*Paulino v. Conopco, Inc.*,
   2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015)..................................................19

*Petrosino v. Stearn's Prod., Inc.*,
   2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) .................................................15

*Pom Wonderful LLC v. Coca Cola Co.*,
   2013 WL 543361 (C.D. Cal. Feb. 13, 2013)..............................................10, 11

*Preira v. Bancorp Bank*,
    885 F. Supp. 2d 672 (S.D.N.Y. 2012)...........................................................................16

*Prohias v. Pfizer, Inc.*,
    485 F. Supp. 2d 1329 (S.D. Fla. 2007) ......................................................................13

*Quintanilla v. WW Int'l, Inc.*,
    541 F. Supp. 3d 331 (S.D.N.Y. 2021).........................................................................18

*SA Luxury Expeditions, LLC v. Schleien*,
    2022 WL 3718310 (S.D.N.Y. Aug. 29, 2022).............................................................20

*Saedi v. Coterie Baby, Inc.*,
    2024 WL 4388401 (S.D.N.Y. Oct. 3, 2024) ................................................................4

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ....................................................................................................17

*T.W.M. v. Am. Med. Sys., Inc.*,
    886 F. Supp. 842 (N.D. Fla. 1995)..............................................................................15

*Toretto v. Donnelley Fin. Sols., Inc.*,
    583 F. Supp. 3d 570 (S.D.N.Y. 2022).........................................................................23

*Troyk v. Farmers Grp., Inc.*,
    90 Cal. Rptr. 3d 589 (Cal. Ct. App. 2009)..................................................................19

*Truss v. Bayer Healthcare Pharms. Inc.*,
    2022 WL 16951538 (S.D.N.Y. Nov. 15, 2022)............................................................7

*Varnes v. Home Depot USA, Inc.*,
    2012 WL 5611055 (M.D. Fla. Nov. 15, 2012) ...........................................................24

*Wang v. Bear Stearns Companies LLC*,
    14 F. Supp. 3d 537 (S.D.N.Y. 2014)...........................................................................21

*Zerilli-Edelglass v. New York City Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003), *as amended* (July 29, 2003) ........................................11

**Statutes**

21 C.F.R. § 201.327 ..............................................................................................................7

21 C.F.R. § 201.327(i) ..........................................................................................................8

21 C.F.R. § 201.327(a)..........................................................................................................8

21 C.F.R. § 352.1 ..................................................................................................................7

21 C.F.R. § 352.10 .......................................................................................................7

21 U.S.C. § 371(a) .......................................................................................................7

21 U.S.C. § 379r(a)(2) .................................................................................................7

Cal. Bus. & Prof. Code § 17200 ................................................................................22

Cal. Bus. & Prof. Code §§ 17204, 17535 ..................................................................18

Cal. Health & Safety Code § 109875 *et seq* ..............................................................20

Cal. Health & Safety Code § 110100 *et seq* ..............................................................21

Fla. Stat. § 501.204(1) ................................................................................................24

Fla. Stat. § 501.212(1) ................................................................................................10

Mich. Comp. Laws § 445.904(1)(a) ...........................................................................10

Michigan Consumer Protection Act ("MCPA") ...........................................2, 10, 25, 26

N.Y. U.C.C. § 2-607(3)(a) ..........................................................................................15

New York Uniform Commercial Code ("UCC") .........................................................15

NY Rules Professional Conduct Rule 3.7 ....................................................................6

NYGBL § 349 ......................................................................................................11, 16

NYGBL § 349(d) ..................................................................................................10, 11

NYGBL § 350 .............................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 8(a) ......................................................................................................2

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(1) ...............................................................................................2

Fed. R. Civ. P. 12(b)(6) ...............................................................................................2

Fed. R. Evid. 201 .........................................................................................................8

*Unseen Sunscreen SPF 40 Effecacy Report,*
     https://cdn.shopify.com/s/files/1/0751/1729/7972/files/Unseen_SPF_40_Reda
     cted.pdf?v=1705617411 (last accessed March 15, 2025).......................................8

U.S. Const. art. VI, cl. 2 .................................................................................................................... 7

Defendant Supergoop LLC ("Supergoop!") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Second Amended Complaint (Dkt. 36) ("SAC") filed by Plaintiffs Marceann Dunning, Amber Latif, and Janet Beaudoin (collectively, "Plaintiffs").

## <u>INTRODUCTION</u>

Less than three months ago, this Court dismissed Plaintiffs' First Amended Complaint ("FAC") because Plaintiffs failed to plausibly allege that they had standing. *Dunning v. Supergoop, LLC*, Dkt. 31 (S.D.N.Y. Jan. 6, 2025) ("Jan. 6 Op."). Specifically, Plaintiffs neither alleged that they tested the actual products that they bought nor that there was a "meaningful link" between the tested products and the purchased products. *Id.* at 10-11. Plaintiffs have not fixed the problems with their FAC that the Court identified in its Order. Plaintiffs' pleading now confirms that Plaintiffs did not test their purchased products—but instead tested (at most) five other products. These tested products were purchased several months removed from any of Plaintiffs' purchases and left to sit in a non-descript location under unclear conditions for several months before being sent to a lab. Plaintiffs' testing allegations (predicated on a small sample) fail to provide results, the number of products actually tested and where and when such tests took place— thus, failing to provide any "meaningful link" to their purchased products. Plaintiffs thus fail to plead the requisite detail to allow for a plausible inference the sunscreen Plaintiffs individually purchased, in fact, had a lower SPF level than stated on the product—and that Plaintiffs actually overpaid for the products. This case should again be dismissed in full on Article III grounds.

Moreover, Plaintiffs' claims are preempted by the Food, Drug, and Cosmetic Act's ("FDCA") "broad preemption clause." *Critcher v. L'Oreal USA, Inc*., 959 F.3d 31, 38 (2d Cir. 2020). Under governing regulations, manufacturers and sellers of sunscreen, like Supergoop!, must abide by certain FDA regulations prior to bringing a product to market. Those regulations govern the formulation, testing, and labeling that must be put on sunscreen products. Plaintiffs

allege that the language on the products' label is "misleading" based on their subsequent independent test. Such a claim is preempted by federal law because it seeks to impose a post-packaging testing requirement that is not required by the pre-marketing FDA regime and would result in a patchwork of conflicting requirements that federal law is meant to prevent.

Finally, aside from standing and preemption, Plaintiffs do not plausibly plead any state law claims.[1] Many of Plaintiffs' claims are subject to the heightened pleading standards for fraud under Federal Rule of Civil Procedure 9(b)—yet Plaintiffs fail to provide even the basic "who, what, where, when, why, and how" of their alleged misrepresentations. And even under Federal Rule of Civil Procedure 8(a)'s standards, the claims are based on unspecified and conjectural harms, bare recitation of statutory elements without factual support, deficient testing allegations, and legal conclusions couched as factual allegations. Accordingly, Plaintiffs' claims should be dismissed.

## <u>LEGAL STANDARDS</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Because standing "is a 'jurisdictional' requirement…[it] 'must be assessed before reaching the merits.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Byrd v. United States*, 584 U.S. 395, 410-11 (2018)).

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

---

[1] Plaintiffs allege violations of: (i) the Florida Deceptive Unfair Trade Practices Act ("FDUTPA") and Michigan Consumer Protection Act ("MCPA") (Beaudoin); (ii) California's False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and Consumer Legal Remedies Act ("CLRA") (Latif); and New York's General Business Law ("NYGBL") (Dunning). Plaintiffs also bring claims for unjust enrichment and breach of express warranty under those states' laws.

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678. *See also LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009) (court need not "accept as true legal conclusions couched as factual allegations"). Dismissal is appropriate where a plaintiff's claims are not plausible. *See Twombly*, 550 U.S. at 570.

## ARGUMENT[2]

### I.    PLAINTIFFS FAIL TO "MEANINGFULLY LINK" THEIR TESTING RESULTS TO THEIR PURCHASED PRODUCTS, AND THUS LACK ARTICLE III STANDING.

The SAC fails for the same reason the Court dismissed the FAC:  Plaintiffs again failed to "'meaningfully link[]' th[e] results' [of the testing they performed] to their actual Purchased products." Jan. 6 Op. at 9 (quoting *Hicks v. L'Oreal U.S.A.*, 2023 WL 6386847, at *1, n.1 (S.D.N.Y. Sept. 30, 2023) (*Hicks I*)).  Courts consider several factors in determining whether plaintiffs satisfy this standard, including: (i) temporal proximity of the testing to the purchase date; (ii) the number of samples tested; and (iii) the geographic proximity of the testing to plaintiff's purchase.  *Id.*. at 10 (citing *Hicks v. L'Oreal U.S.A.*, 2024 WL 4252498, at *10 (S.D.N.Y. Sept. 19, 2024) (*Hicks II*)).  Plaintiffs still fail to provide the requisite detail, and do not "sufficiently link[] the results of independent testing of the same product line to the product[s] actually purchased." *Id*. at *9.

---

[2] Supergoop! presumes the Court's familiarity with the basic underlying allegations, and refers to new allegations pleaded in the SAC, as relevant, throughout its argument.

All of Plaintiffs' new allegations in the SAC focus on temporal proximity. In order to establish temporal proximity, Plaintiffs must allege sufficient detail to "establish that the tests occurred 'reasonably near in time' to their purchases." *Onaka v. Shiseido Americas Corp.*, 2024 WL 1177976, at *2 (S.D.N.Y. Mar. 19, 2024). Here, Plaintiffs now say that they tested products at some point "in October through December 2023." SAC ¶ 47. Plaintiffs allege that they purchased their products: (i) "*[o]n or around* April 12, 2023" (Dunning); (ii) "*[o]n or around* March 2023" (Latif); (iii) and "[o]n July 16, 2023 and October 22, 2024" (Beaudoin). SAC ¶¶ 10-12 (emphases added). As a threshold matter, Dunning and Latif provide only *approximate* purchase dates/months that do not allow the Court to answer "the critical question" of when the products were purchased, let alone establish whether such purchase was "reasonably near in time" to the testing. *See, e.g.*, *Onaka,* 2024 WL 1177976, at *3 (allegation that plaintiff purchased product "most recently in September 2021" when independent testing was in "September and October of 2021" insufficient). Even putting these defects aside, none of the allegations establish temporal proximity. For example, at least one of Beaudoin's purchases was in October 2024—over a year after the tested products were purchased. SAC ¶ 12. At best, Plaintiffs' single test of a handful of products several months after *any* of the alleged purchases "fail[s] to meaningfully link the tested [products] to the [products] [they] purchased, temporally or otherwise." *Saedi v. Coterie Baby*, 2024 WL 4388401, at *5 (S.D.N.Y. Oct. 3, 2024) (no standing where test of diaper for PFAS that occurred in February 2024 insufficient to allow for inference that diapers purchased in March 2024 contained PFAS).

Even assuming, *arguendo*, the Court found the temporal proximity element satisfied, Plaintiffs have still failed to allege that the alleged defect "is so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once." *Onaka*, 2024 WL 1177976, at *2;

*see also Lurenz v. Coca-Cola Co.*, 2024 WL 2943834, at *4 (S.D.N.Y. June 10, 2024) ("temporal proximity between the testing and the purchase cannot alone support the inference that" the purchased products were mislabeled). As this Court has recognized, "testing should involve more than a small number." *Hicks II*, 2024 WL 4252498, at *10. Plaintiffs allege they tested, at most, three bottles of Unseen Face Sunscreen and two bottles of Unseen Body Sunscreen. SAC ¶ 8. Such small sample sizes do not provide a factual basis upon which they can plausibly allege that the alleged defect was so widespread that the purchased products were mislabeled. *Kell v. Lily's Sweets*, 2024 WL 1116651, at *4 (S.D.N.Y. Mar. 13, 2024) (no injury-in-fact where plaintiffs' allegations were "based on just two or three samples"); *Hicks II*, 2024 WL 4252498, at *10-11 (noting that "small" sample of "only one tube of each Product" (5 products total) "might very well preclude finding an alleged injury under a price-premium theory").

Nor do Plaintiffs plead the results of such alleged testing. Notwithstanding purportedly supplying the lab with two samples of Unseen Body and three samples of Unseen Face, SAC ¶ 8, Plaintiffs summarily allege that "the SPF Label Value for Unseen Body Sunscreen was 20, and the SPF label value for the SPF Face Sunscreen was 23," *Id*. ¶ 52. In other words, Plaintiffs provide a single value notwithstanding allegedly "supplying [a] laboratory" with five products—providing no information as to the incidence of the purported issue. These conclusory results "do not permit[] a court to infer that the plaintiff purchased a specific product with a defect that had been plausibly reported by third-party tests to be widespread, systematic, routine, or uniform." *Kell*, 2024 WL 1116651, at *5 (citing *John v. Whole Foods Mkt. Grp.*, 858 F.3d 732, 736-738 (2d Cir. 2017)).

Finally, courts consider the "the geographic proximity of the testing to the plaintiff's purchases." Jan. 6 Op. at 10 (quoting *Hicks II*). Plaintiffs' counsel alleges that: (i) someone purchased the tested products "through the Supergoop.com website on August 23, 2023;" (ii) the

products "were kept at room temperature prior to testing" in an undisclosed location for several months; and (iii) Plaintiffs' counsel "then supplied [a] laboratory" in an undisclosed location with the products.  SAC ¶¶ 47-48.[3]  The lack of detail as to where the product was sent, where it was stored for months prior to testing, the conditions in which it was stored (aside from "room temperature"), and where the testing itself took place does not "explain[] why a third party's analysis can be reasonably extrapolated to the plaintiff's individual purchase." *Kell*, 2024 WL 1116651, at *5.  Moreover, the allegations in the SAC belie any effort to gloss over the absence of geographic proximity.  Plaintiffs allege they purchased the Products: (i) at a Sephora in Kohl's in New York (Dunning); (ii) at an Ulta store in California (Latif); and (iii) ordered from Amazon "while at [] home in Michigan" (although it is unclear where it was sent) (Beaudoin). SAC ¶¶ 10-12.  That Plaintiffs' products were not "purchased in similar circumstances (for instance…at a similar time and place)" counsels against finding a sufficient geographic link with the independent testing results. *Kell*, 2024 WL 1116651, at *4; *John,* 858 F.3d at 735 ("The investigation focused on the eight Whole Foods stores operating in New York City during that period, which included the two stores that John patronized.").

In sum, Plaintiffs' allegations again amount to little more than a single test on (at most) five products, the location, details, and results of which are unclear.  Like the FAC, the SAC does not plausibly allege that Plaintiffs' purchased products contained a lower SPF value than indicated on the Product label.  Plaintiffs suffered no injury and this case should be dismissed with prejudice.

---

[3] Plaintiffs' only description regarding handling of the tested products is that they "were kept at room temperature." SAC ¶ 48.  That factual assertion (and any others concerning handling of the tested products and shipment to the testing laboratory) can only be provided by Plaintiffs' counsel who themselves purchased the tested products, creating concerns under Rule 3.7 of the NY Rules Professional Conduct.  That Rule provides, absent limited exceptions, a lawyer is precluded from "act[ing] as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact."

## II.     PLAINTIFFS' CLAIMS ARE PREEMPTED BECAUSE THEY SEEK TO IMPOSE REQUIREMENTS BEYOND FEDERAL LAW.

Plaintiffs' claims are preempted by federal law—which specifies how a sunscreen's SPF is determined, and how that information must be stated on the product label.  Plaintiffs' claims seek to impose additional requirements beyond those required by the FDA and would result in a patchwork of conflicting requirements that such regulations are meant to prevent.

The Supremacy Clause provides that "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Grp.*, 505 U.S. 504, 516 (1992) (internal quotation omitted); *see* U.S. Const. art. VI, cl. 2.  The FDCA sets forth a statutory framework for the FDA's regulation of non-prescription sunscreen drug products in the U.S., including the labeling of such products.  *See* 21 U.S.C. § 371(a).  As relevant here, the FDCA's preemption clause provides that no state "may establish or continue in effect any requirement… that is different from or in addition to, or that is otherwise not identical with, a[n] [FDCA] requirement."  21 U.S.C. § 379r(a)(2).

The FDA's regulations provide detailed effectiveness, testing, and labeling of sunscreen before a manufacturer can bring a sunscreen to market.  The regulations govern formulation through a "monograph," which "permits sunscreens to be formulated using sixteen specified active ingredients below certain thresholds."  *Truss v. Bayer Healthcare Pharms. Inc.*, 2022 WL 16951538, at *3 (S.D.N.Y. Nov. 15, 2022); *see* 21 C.F.R. § 352.10.  The FDA states that a sunscreen manufacturer's product is "generally recognized as safe and effective and is not misbranded if it meets [the monograph]." 21 C.F.R. § 352.1.

Next, the FDA's regulations specify what effectiveness and SPF testing must be done—the results of which is what determines the "Sun Protection Factor" number that must appear on a products' label.  *See* 21 C.F.R. § 201.327.  Such testing requires no less than ten human test subjects from whom the tester has acquired their medical history concerning effects of sun on their

skin and physically examined their skin, application of the sunscreen to specified locations on the subject's body, administering increasing, successive doses of UV radiation, evaluating results in specified time periods, and using a formula to calculate the SPF value for each of the subjects. *See* 21 C.F.R. § 201.327(i). Once a product passes such laboratory testing, the rule mandates the "labeling [that] shall be prominently placed on the principal display panel." 21 C.F.R. § 201.327(a).

Additionally, in order to ensure a product continues to be safe and effective after it has launched in the market and has the ingredients and strength it claims, the FDA has issued the Current Good Manufacturing Practices ("CGMP") regulations for drugs. CGMP regulations ensure over-the-counter drug products meet minimum requirements for the methods, facilities, and controls used in manufacturing, processing, and packing of a drug product.[4] 21 C.F.R. § 211.165. Specifically, it requires every batch of drug product to conform to final specifications, including the identity and strength of each active ingredient. *Id.*

While it is not legally required to do so, Supergoop! publishes the FDA efficacy reports of each of its products on its website, including for Unseen Body and Unseen Face Sunscreen.[5] Because such results indicate a mean SPF of 40, the FDA's regulations state that the labeling must "state[] 'SPF [insert numerical SPF value resulting from testing …].'" 21 C.F.R. § 201.327(a).

---

[4]  *See*  https://www.fda.gov/drugs/pharmaceutical-quality-resources/current-good-manufacturing-practice-cgmp-regulations (last accessed March 21, 2025).

[5]  *See*  https://cdn.shopify.com/s/files/1/0751/1729/7972/files/Unseen_SPF_40_Redacted.pdf?v=1705617411  (last accessed March 21, 2025) ("Efficacy Report"). The Court may consider Supergoop!'s website product information as "integral to the complaint" because Plaintiffs' complaint incorporates the website by reference. SAC ¶¶ 55-57, 61-62, 66, 68-70; *see L-7 Designs, Inc. v. Old Navy*, 647 F.3d 419, 422 (2d Cir. 2011) (complaint "deemed to include any … materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (citation omitted)); *see also Hicks I*, 2023 WL 6386847, at *1, n.1 (considering "documents incorporated by reference" in complaint). The "court may also consider matters 'of which judicial notice may be taken under Fed. R. Evid. 201,'" which includes "information on a party's publicly available website, as long as the authenticity of the site is not in dispute." *Dwyer v. Allbirds, Inc*., 598 F. Supp. 3d 137, 148 (S.D.N.Y. 2022) (quoting *Kramer v. Time Warner, Inc*., 937 F.2d 767, 773 (2d Cir. 1991)). Here, there is no dispute as to the authenticity of Supergoop!'s website, and the Court may, at minimum, take judicial notice of the contents therein.

That is what the Products' label reflects.

To the extent that Plaintiffs claim such language is "misleading," such a claim is preempted by federal law—which mandates the formulation, testing, and labeling process which must be used, and the accompanying language that must be stated on the Products' label.  Nowhere do Plaintiffs allege that Supergoop! did not comply with FDA regulations.[6]  Rather, Plaintiffs allege the language on the products' label is "misleading" based on their independent test, performed *post-labeling*.  Plaintiffs thus seek a regime that would flip the FDA's regulatory framework on its head—imposing the additional requirement of repeated and post-labeling SPF value testing on human subjects years after the fact.  To allow such claims to move forward "would be construing state law to impose many 'requirements' that are not contained in the federal statute, or in the regulations issued thereunder, and to disrupt what Congress intended to be a uniform—and federally-led—regulatory scheme." *Critcher*, 959 F.3d at 38.  Moreover, to the extent that Plaintiffs disagree with the FDA's regulatory requirements, Plaintiffs' resolution is to "engage in a citizen petition," rather than ask this Court to interfere with the FDA's conclusions, formed after an extensive notice-and-comment period. *See Goldstein v. Walmart*, 637 F. Supp. 3d 95, 113, 113 (S.D.N.Y. 2022).  Accordingly, Plaintiffs' claims are preempted by federal law and must be dismissed.

---

[6] Plaintiffs allege that the products they purchased were "not the version subject to the 2018 testing Supergoop disclosed on its website." SAC ¶ 68.  That is, under Plaintiffs' theory, the testing on Supergoop's website applied to products no longer for sale and, as to products that were for sale (such as Plaintiffs'),"it is possible Supergoop never the [sic] subjected this version of the Product to an FDA-compliant SPF test." *Id.* at ¶ 69.  Plaintiffs cite nothing in support of this illogical assertion.  And it is self-evidently inaccurate.  Supergoop!'s testing, which must be conducted prior to product labeling and initial sales, is dated December 18, 2018.  *See* Efficacy Report.  Yet, Plaintiffs allege products "**sold… [in] 2018**" (and extending to 2019) were packaged in accordance with this December 18, 2018 testing.  *Id.* at ¶ 67.  It is chronologically impossible for products sold throughout 2018 to have been subjected to testing dated December 18, 2018.  The obvious conclusion is that testing in December 2018 was conducted on products brought to market later in 2019 (i.e., the products that Plaintiffs identify as sold December 2019 to December 2024, including their own products).  It is only by advancing facially erroneous theories that Plaintiffs allege their products were not "subject[ed] to the 2018 testing." *Id.* at ¶ 69.  Such "'naked assertion[s]' devoid of 'further factual enhancement'" are plainly inadequate and properly disregarded. *Iqbal*, 556 U.S. at 678.

9

### III.    PLAINTIFF'S STATE STATUTORY CLAIMS ARE FORECLOSED BY SAFE HARBOR RULES.

Plaintiffs' state consumer law claims should be dismissed because the Products at issue are subject to FDA regulation, and are thus foreclosed under relevant safe harbor provisions.

The Michigan Consumer Protection Act ("MCPA") does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a). Under that exemption, "the relevant inquiry 'is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'" *Breeze Smoke LLC v. Yatin Enterprises*, 2023 WL 3070893, at *13 (W.D. Mich. Apr. 25, 2023) (quoting *Liss v. Lewiston-Richards, Inc*., 732 N.W.2d 514, 519 (Mich. 2007)).  Likewise, the New York General Business Law ("NYGBL") has a similar provision, which provides "a complete defense that the act or practice is ... subject to and complies with the rules and regulations of, and the statutes administered by ... any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by ... federal courts." N.Y. Gen. Bus. Law § 349(d).  As for Florida, the FDUTPA includes a safe harbor provision, pursuant to which the statute does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1).  California courts employ a similar safe harbor rule, whereby courts may not "override" a California state or federal determination.  *Pom Wonderful LLC v. Coca Cola Co*., 2013 WL 543361, at *5 (C.D. Cal. Feb. 13, 2013).

As discussed above, and as Plaintiffs themselves allege, SAC ¶¶ 41-45, sunscreen is subject to extensive regulation by the FDA—including its labeling.  Because the testing and labeling is governed by the FDA, the safe harbor rules apply.  *See Duronio v. Merck & Co*., 2006 WL 1628516, at *6-7 (Mich. Ct. App. June 13, 2006) (dismissing deceptive advertising claim under

FDCA); *Green v. SweetWorks Confections, LLC*, 2019 WL 3958442, at *4-5 (S.D.N.Y. Aug. 21, 2019) (applying Section 349(d)'s safe harbor to find a complaint failed to allege a Section 349 violation because the complained-of act complied with FDA regulations); *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013) (affirming dismissal of misleading labeling claims under FDUTPA safe harbor where such labels regulated by FDA); *Pom Wonderful*, 2013 WL 543361, at *5 (dismissing claims under UCL, CLRA, and FAL where regulated by FDA).

Accordingly, Plaintiffs' state statutory claims should be dismissed.

## IV.    PLAINTIFFS' EQUITABLE TOLLING ALLEGATIONS FAIL TO MEET THE RULE 9(B) HEIGHTENED PLEADING STANDARDS.

Plaintiffs' fraudulent concealment tolling allegations fail to meet the requisite Rule 9(b) standard and are thus subject to dismissal.  Plaintiffs rely on conclusory allegations of "secrecy" and that Supergoop! "knew or should have known" the Products' true SPF that are facially implausible and insufficient as a matter of law.  *See* SAC ¶¶ 53, 83.  Moreover, Plaintiffs provide no information from which an inference could be made that they were diligent in pursuing their claims.  Accordingly, their equitable tolling claim must be dismissed.

"[T]he doctrine[] of equitable tolling … may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotations omitted).  However, "equitable tolling is only appropriate in [ ] rare and exceptional circumstance[s], in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003) (internal citations and quotations omitted).  In order to toll the statute of limitations because of fraudulent concealment, a plaintiff must show: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment

prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Kyszenia v. Ricoh USA, Inc*., 583 F. Supp. 3d 350, 361 (E.D.N.Y. 2022) (quoting *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012)). Moreover, Rule 9(b) requires pleading the elements of fraudulent concealment with particularity. *Id*. Thus, the complaint must "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id*. (quoting *Milo v. Galante*, 2011 WL 1214769, at *5 (D. Conn. Mar. 28, 2011)).

Here, Plaintiffs' allegations are far too vague and conclusory to meet even Rule 8, let alone Rule 9(b)'s heightened standard. *See De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013) ("Generalized or conclusory allegations of fraudulent concealment are not sufficient to toll a statute of limitations."). First, they repeat their allegation that the SPF values were lower than listed on the packaging. SAC ¶ 82. They then make conclusory allegations of "fraudulent concealment" and "techniques of secrecy" based on (1) a lack of disclosure that the SPF was lower than listed, (2) the "highly technical" nature of FDA-compliant SPF testing, and (3) the cost of such testing. (*Id.* ¶¶ 83, 87). Only the first has anything to do with Supergoop's alleged conduct, and it is no more than a restatement of Plaintiffs' overall allegation that the SPF value listed on the packaging was wrong. Indeed, these allegations do not explain "how or why" Supergoop! prevented Plaintiffs (and unnamed class members) from filing suit and provide "no way to tell whether the plaintiffs were reasonably diligent in exercising their rights during the statutory period, which is an essential element of tolling based on concealment." *Kyszenia,* 583 F. Supp. 3d at 362 (internal quotation omitted). And Plaintiffs' conclusory allegations that

Supergoop! "knew or should have known" the Products had a lower SPF are factually unsupported and insufficient to plead fraudulent intent. *Id*. at 357, 362. Accordingly, Plaintiffs' equitable tolling allegations must be dismissed.

## V. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED AS DUPLICATIVE.

Plaintiffs purport to plead a claim for unjust enrichment "[o]n behalf of Plaintiffs and the Class." SAC ¶¶ 168-73. However, Plaintiffs' unjust enrichment claims fail under New York, California, Michigan, and Florida law, because they cannot be simultaneously pleaded alongside duplicative breach of warranty and/or state consumer protection law claims, as Plaintiffs do here.

### A. The New York Claims Must Be Dismissed as Duplicative of the State Consumer Protection Law and Express Warranty Claims.

Under New York law, "[c]ourts regularly dismiss unjust enrichment claims as duplicative of NYGBL claims when a[] [Complaint] fails to meaningfully distinguish the two." *Kominis v. Starbucks Corp.,* 692 F. Supp. 3d 236, 253 (S.D.N.Y. 2023).

Here, Plaintiffs' unjust enrichment claims are based on the same exact factual allegations as the NYGBL and breach of express warranty claims, *i.e.*, Plaintiffs allege that Supergoop! mislabeled the Products, knew of the alleged mislabeling, and was thus unjustly enriched by Plaintiffs' purchases. *See* SAC ¶¶ 168-73. Accordingly, the unjust enrichment claims are subject to dismissal under New York law. *See Kominis,* 692 F. Supp. 3d at 253 (dismissal proper where "Plaintiffs' claim for unjust enrichment is based on the exact same facts as their other claims").[7]

---

[7] Moreover, "[d]amages are also an element of claims for … unjust enrichment under Florida and New York law." *Prohias v. Pfizer, Inc*., 485 F. Supp. 2d 1329, 1334 (S.D. Fla. 2007). A claim for unjust enrichment under Michigan law requires a showing of the receipt of a benefit by defendant and inequity resulting therefrom. *See, e.g.*, *Landstar Express Am., Inc. v. Nexteer Auto. Corp.,* 900 N.W.2d 650, 657 (Mich. Ct. App. 2017). For the reasons discussed herein (*see* Sections VII.A, IX.B), Plaintiffs received the benefit of their bargain, and thus fail to allege any benefit improperly retained by Supergoop!.

**B.    The California and Michigan Unjust Enrichment Claims Must Be Dismissed As Duplicative of the Express Warranty Claims.**

Plaintiffs' unjust enrichment claim fares no better under California and Michigan law. Plaintiffs plead both unjust enrichment and a claim for breach of express warranty.  SAC ¶¶ 105-11.  However, California does not have a standalone unjust enrichment cause of action, and the California Plaintiff's claim (if entertained at all) must be construed as a quasi-contract claim seeking restitution.  *Kominis*, 692 F. Supp. 3d at 253-54.  Plaintiff's quasi-contract and express warranty "claims cannot be simultaneously advanced."  *Id.*  Similarly, in Michigan, a plaintiff cannot maintain an unjust enrichment claim and allege a breach of express warranty claim "governing the same subject matter as that claim."  *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 634-35 (E.D. Mich. 2019).  Here, the subject matter of Plaintiffs' alleged unjust enrichment and express warranty claims is identical.  Accordingly, the California and Michigan Plaintiffs' unjust enrichment claims must be dismissed as duplicative of their contract-based claims.

**VI.    PLAINTIFFS' EXPRESS WARRANTY CLAIMS MUST BE DISMISSED.**

Plaintiffs' breach of express warranty claims must be dismissed because they fail to plead the requisite privity.  Moreover, Dunning's claim must be dismissed for the additional reason that she fails to plead timely pre-suit notice.

**A.    Plaintiffs Fail to Plead the Requisite Privity Relationship for Their Breach of Express Warranty Claims.**

Plaintiffs' breach of express warranty claims fail under Michigan, New York, and Florida law because Plaintiffs fail to allege contractual privity with Supergoop!.

To plead a breach of express warranty claim, a plaintiff must plead contractual privity with the defendant.  *See Montgomery v. Kraft Foods Glob.*., 2012 WL 6084167, at *13 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304 (6th Cir. 2016) (Michigan); *MacNaughton v. Young Living*

*Essential Oils, LC*, 67 F.4th 89, 101 (2d Cir. 2023); (New York); *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (Florida).

Moreover, a plaintiff who buys a product from a retailer is generally not in privity with the manufacturer.  *See Montgomery*, 2012 WL 6084167, at *13 (Michigan); *Ashour v. AriZona Beverages USA LLC*, 2022 WL 14038713, at *3 (S.D.N.Y. Oct. 24, 2022) (New York); *T.W.M.*, 886 F. Supp. at 844 (Florida).

Plaintiffs do not plead privity with Supergoop!.  Rather, they each allege they purchased their products from a retailer.  SAC ¶¶ 10-12.  Accordingly, their breach of express warranty claims must be dismissed.

### B.    Plaintiffs Have Failed to Sufficiently Allege Timely Pre-Suit Notice.

"In order to asse[r]t a claim for breach of an express or implied warranty under New York law, a buyer must provide the seller with timely notice of the alleged breach."  *MacNaughton*, 67 F.4th at 100 (internal quotation omitted).  The New York Uniform Commercial Code ("UCC") requires a plaintiff to provide notice to a seller "within a reasonable time" after she discovers or should have discovered the alleged breach.  *See* N.Y. U.C.C. § 2-607(3)(a).  Failure to provide such timely notification "bar[s] [the buyer] from any remedy[.]"  *Id.*

Dunning failed to plead sufficient facts for timely notice.  She alleges that "[o]n December 21, 2023," her counsel "sent Defendant a pre-suit notice letter that complied in all respects" with the NY UCC.  SAC ¶ 111.  Critically, the Complaint "makes no mention of when, specifically during the … period during which [the plaintiff] allegedly used the Products, she discovered" the breach.  *MacNaughton*, 67 F.4th at 101.  And this Court need not credit Dunning's legal conclusion that her pre-suit notice complied with the UCC.  *Petrosino v. Stearn's Prod., Inc.*, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018).  Because Dunning fails to plead sufficient information to determine whether notice was timely, the Complaint should be dismissed.  *See*

*Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 418-19 (S.D.N.Y. 2022) ("Absent any allegation about when or how [plaintiff] discovered the breach, it is impossible to determine non-speculatively that notice was timely.").[8]

## VII.    THE NEW YORK PLAINTIFF'S CLAIMS FAIL.

### A.    Plaintiff Has Failed to Sufficiently Plead Her New York GBL Claims.

Dunning's NYGBL claims fail for two reasons: (1) she has not pleaded any actual injury resulting from her purchase of the Product, and (2) the FDCA forecloses private rights of action, and she does not allege the requisite "free standing act of deceptiveness."

*First*, Dunning pleads no inflated price as a result of SPF, and thus no actual injury resulting from the allegedly deceptive conduct.  "To plead an injury pursuant to either §§ 349 or 350, a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."  *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (internal quotation omitted).  However, "an allegation of a defendant's deception alone does not suffice to plead injury, because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation."  *Id*.  Rather, a plaintiff "must plead something more than the defendant's deception; for example, that '*the price of the product was inflated as a result of defendant's deception*.'"  *Id*. (quoting *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 677 (S.D.N.Y. 2012)); *see also Braynina v. TJX Companies, Inc.*, 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016) (NYGBL requires "a showing of pecuniary or actual harm apart from the deceptive conduct.").

Here, Dunning alleges that she "would not have purchased [the products], or would have

---

[8] Michigan and Florida also have pre-suit notice requirements.  Beaudoin does not allege she provided (nor did she provide) such notice.  Therefore, such claims must be dismissed under Michigan and Florida law.  *See, e.g., Johnston v. PhD Fitness, LLC*, 2018 WL 646683, at *3-4 (E.D. Mich. Jan. 31, 2018) (Michigan); *Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011) (Florida).

paid significantly less for [the products]" if she knew that "the Product contained a materially lower SPF." SAC ¶ 10. But nowhere in Dunning's allegations does she allege that the value of the products, in fact, was affected by SPF—such that the alleged SPF misrepresentation impacted the cost of the product and actually injured her.[9] The absence of such allegations is fatal to Dunning's claims. *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (claim "legally flawed" and no "actual harm" where "plaintiffs do not allege that the cost of cigarettes was affected by the alleged misrepresentation" regarding nicotine). "[T]he gravamen of [Dunning's] claim of injury [is] that [Supergoop!'s] deception prevented [her] from making free and informed choices as [a] consumer[.]" *Irvine v. Kate Spade & Co.*, 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017) (internal quotation omitted). But Dunning's "subjective disappointment…is not a cognizable form of injury." *Id.* "[I]t is not sufficient for a plaintiff merely to plead that she would not have purchased a product but for a deceptive practice." *Id.* Accordingly, Dunning's NYGBL claims must be dismissed.

*Second*, Dunning's NYGBL claims also fail because she has not alleged any independently actionable, "free-standing claims of deceptiveness"; rather, her claims rest entirely on an alleged violation of FDA regulations. *See Colpitts*, 527 F. Supp. 3d at 579 (internal quotation omitted). The FDCA does not provide a private right of action. *See* Jan. 6 Op. at 13 ("[I]nsofar as Plaintiffs suggest that they have standing to sue Supergoop to enforce the FDA's regulations, that is incorrect as well."). A plaintiff may not "circumvent such a lack of a private right of action in one statute by incorporating allegations of its violations into claims pleaded under another statute that does allow for a private right of action." *Colpitts*, 527 F. Supp. 3d at 579. Thus, because "enforcement

---

[9] Though Plaintiffs suggest SPF is important in their choice of sunscreen, they do not allege sunscreen is priced at a premium based on SPF content. If anything, Plaintiffs allege any premium is due to attributes *other than* SPF—specifically, its "invisible" formulation and double-use as a cosmetic primer. SAC ¶¶ 20-31.

of FDA regulations is reserved to the government," for a plaintiff's claims to survive she must allege "a deceptive or misleading act or practice and not merely a violation of a regulation." *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 800 (S.D.N.Y. 2021).

Here, Dunning's sole theory of Supergoop!'s purportedly "deceptive" conduct is that her own "FDA-compliant" testing establishes that Supergoop! knowingly mislabeled the Products in a false and misleading manner.  *See* SAC ¶ 47 (Plaintiffs conducted testing "in accordance with the FDA regulations"); ¶ 53 (alleging "Defendant knew or should have known that the Products contain" a lower SPF "because they were required to perform the same testing in accordance with FDA regulations"); ¶ 69 ("it is possible Supergoop never the [sic] subjected this version of the Product to an FDA-compliant SPF test").  Dunning alleges no free-standing claims of deceptiveness to form the predicate of her NYGBL claims.  Accordingly, the NYGBL claims should be dismissed.  *Barreto*, 518 F. Supp. 3d at 800.

## VIII.   THE CALIFORNIA CLAIMS FAIL.

Plaintiff Latif brings claims under the UCL, FAL, and CLRA.  Because the UCL, FAL, and CLRA "share similar attributes," courts often analyze them together.  *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 344 (S.D.N.Y. 2021) (internal quotation omitted); *see also Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1051 (C.D. Cal. 2022) (same).  Latif has failed to allege a violation of any of the three.

### A.    Plaintiff Has Failed to Sufficiently Plead that She Suffered an Economic Injury In Fact As Required By California Law.

Latif's statutory claims fail because she has not sufficiently alleged that she "suffered injury in fact and has lost money or property as a result of" the conduct complained of, a requirement under both the UCL and FAL.  *See* Cal. Bus. & Prof. Code §§ 17204, 17535.  Nor has she alleged that she suffered "tangible increased cost," as required by the CLRA.  *See Meyer v.*

*Sprint Spectrum L.P*., 200 P.3d 295, 301 (Cal. 2009). California courts view all three statutes' standing requirements as "effectively identical." *Hansen v. Newegg.com Americas, Inc*., 236 Cal. Rptr. 3d 61, 67 (Cal. Ct. App. 2018). The "injury in fact" language "has the same meaning as it does for Article III standing." *City of Long Beach v. Total Gas & Power N. Am., Inc*., 465 F. Supp. 3d 416, 448 (S.D.N.Y. 2020), *aff'd*, 2021 WL 5754295 (2d Cir. Dec. 3, 2021). Thus, the requirements for statutory standing under the UCL, FAL and CLRA "are similar, if not 'more stringent than the federal standing requirements.'" *See Evolution Fast Food One, LP v. HVFG, LLC*, 720 F. Supp. 3d 251, 265 (S.D.N.Y. 2024) (quoting *Troyk v. Farmers Grp.*, 90 Cal. Rptr. 3d 589, 625 n.31 (Cal. Ct. App. 2009)).

"[F]or substantially the same reasons that Plaintiff lacks Article III standing," *see supra* Section I, Plaintiff lacks statutory standing under the UCL, FAL, and CLRA. *Evolution Fast Food*, 720 F. Supp. 3d at 265.

### B.     Plaintiff Has Failed to Plead the Requisite Fraudulent Conduct Under Rule 9(b).

Claims under the CLRA, UCL, and FAL are subject to Rule 9(b)'s heightened pleading requirements if premised on allegations of fraud. *Paulino v. Conopco, Inc*., 2015 WL 4895234, at *6 (E.D.N.Y. Aug. 17, 2015). Thus, a plaintiff must plead "with particularity" the "who, what, where, when, and why of" their claimed misrepresentations. *Kominis*, 692 F. Supp. 3d at 254 (internal quotations omitted). One of the purposes of the particularity requirement is to provide a defendant fair notice of the plaintiff's claim. *Paulino*, 2015 WL 4895234, at *6 (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)).

Here, Latif's claims are subject to Rule 9(b) because they allege, *inter alia*, that Supergoop! engaged in fraudulent business practices and fraudulently concealed the products' SPF from consumers. SAC ¶¶ 81-88, 123-26, 134. However, the Complaint is devoid of the requisite

19

detail—including because it fails to specify "when the statements were made," *i.e.*, the date of purchase, (*see id.* ¶¶ 10-11 (alleging purchases made "[o]n or around" certain dates)), or when she discovered the alleged misrepresentation, thus giving rise to an inference that the representation on her product label was false. *See, e.g.*, *SA Luxury Expeditions, LLC v. Schleien*, 2022 WL 3718310, at *6 (S.D.N.Y. Aug. 29, 2022) (Rule 9(b) not satisfied where complaint failed to allege "when the leads were submitted, how they were submitted, how Plaintiff kn[ew] they came from Defendants, and what they said"); *Meserole v. Sony Corp. of Am.*, 2009 WL 1403933, at *3, *5 (S.D.N.Y. May 19, 2009) (dismissing claims where "Plaintiffs do not allege when or by whom those alleged misrepresentations were made… or the basis for Plaintiffs' claim that Defendants knew that those statements were false and misleading").

Additionally, Latif's generalized allegations that Supergoop! knew the products did not contain SPF 40, SAC ¶ 53, are insufficient to plead fraudulent intent. *See Kominis*, 692 F. Supp. 3d at 254. Indeed, such pleading fails to provide Supergoop! with fair notice of when the alleged misrepresentation took place—and does not enable Supergoop! to properly defend against the serious allegations regarding Supergoop!'s business practices—and thus runs afoul of the fundamental purpose of Rule 9(b)'s heightened requirements. Accordingly, Latif's claims must be dismissed.

## C.    Plaintiff Has Failed to Sufficiently Plead "Unlawful" Conduct Under the UCL.

Additionally, Latif has failed to state a UCL claim under an unlawful or unfair theory. On her unlawful claim, Latif looks to the FAL, CLRA, FDCA, and the California Sherman Food, Drug, and Cosmetic law, Cal. Health & Safety Code § 109875 *et seq.* ("Sherman law") as the predicates, but fails to sufficiently plead a violation of any of those laws—whether on standing, failure to state a claim, or preemption grounds. Accordingly, her UCL claim based on purported underlying "unlawful" conduct must be dismissed.

The UCL's "unlawful" prong "borrows violations from other laws [b]y making them independently actionable as unfair competitive practices." *Evolution Fast Food One*, 720 F. Supp. 3d at 265 (alteration in original) (internal quotation omitted).  In order to plead a claim under the unlawful prong, a plaintiff "must plead, inter alia, a predicate violation of an underlying law." *Id.* (internal quotation omitted). Thus, "[i]f a plaintiff cannot state a claim under the predicate law, … [the UCL] claim also fails." *Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (second alteration in original) (internal quotation omitted).

Latif alleges that Supergoop! has violated the unlawful prong through violation of the FAL, CLRA, FDCA, and the Sherman law.  SAC ¶ 127.  As to the FAL and CLRA, for the reasons stated above, Latif has failed to allege standing or state a claim under the applicable heightened pleading standards.  Those claims therefore cannot serve as the predicate for an unlawful UCL claim.  Additionally, as explained above, Latif's FDCA claim fails because Latif has failed to sufficiently plead her independent testing was compliant with FDA standards or not preempted.  Accordingly, Latif has failed to plead a violation of relevant federal labeling standards.

Finally, as to the Sherman law, Latif briefly references that statute twice but does not affirmatively plead how any alleged conduct violates such law.  *See* SAC ¶¶ 127, 129.  To the extent Latif is attempting to use the FDCA as the predicate for a Sherman law violation,[10] that claim rises and falls with the insufficient FDCA claim.  Thus, Latif has failed to plead an underlying statutory violation not otherwise preempted to serve as the basis for an "unlawful" UCL violation, and that claim must be dismissed.  *See, e.g.*, *Wang v. Bear Stearns Companies LLC*, 14 F. Supp. 3d 537, 552 (S.D.N.Y. 2014); *Evolution Fast Food One*, 720 F. Supp. 3d at 265-66.

---

[10] The Sherman law adopts certain federal labeling requirements in the FDCA.  *See* Cal. Health & Safety Code § 110100 *et seq.* (cited in SAC ¶ 127).

**D.      Plaintiff Has Failed to Sufficiently Plead "Unfair" Conduct Under the UCL.**

Plaintiffs' lack of standing dooms all three of the UCL, FAL, and CLRA claims.  But even if this Court were to find Plaintiffs properly pled standing, it should still dismiss that portion of Latif's UCL claim brought under the "unfair" prong of the UCL, which she alleges is "broader than her claims under the FAL, CLRA, or UCL's 'fraudulent' prong."  SAC ¶ 136; Cal. Bus. & Prof. Code § 17200.  In fact, her "unfair" claim is entirely duplicative of her FAL, CLRA, and UCL "fraudulent" claims, which are all insufficiently pleaded, and should be dismissed on its own for that reason.

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  *King v. Nat'l Gen. Ins. Co*., 2023 WL 8879261, at *7 (N.D. Cal. Dec. 22, 2023) (quoting *Swafford v. Int'l Bus. Machines Corp*., 408 F. Supp. 3d 1131, 1151 (N.D. Cal. 2019)).  "Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law, (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer."  *Doe v. CVS Pharmacy, Inc*., 982 F.3d 1204, 1214–15 (9th Cir. 2020) (internal citations and quotations omitted).

"[W]here the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive."  *Hadley*, 243 F. Supp. 3d at 1104-05.  Because Latif's allegations for the "unfair"

prong rely on the same business practices addressed in the other prongs, and those prongs are insufficiently pleaded, Latif's unfair theory of relief does not survive. In any event, even assuming the other prongs were not deficient, Latif's "unfair" claim fails because: (i) it fails to "explain how" the challenged conduct violates public policy; (ii) it leaves the court "to guess what conduct" was "immoral, unethical, oppressive, unscrupulous or substantially injurious;" and (iii) it generally relies on "conclusory recitation" of the UCL's legal standards. *See Doe*, 982 F.3d at 1215. To the extent Latif is relying on "profit motive" as the basis of its immoral conduct, such conduct alone is insufficient. *Id.* Accordingly, Latif's "unfair" UCL claim must be dismissed.

## IX.    THE FLORIDA CLAIMS MUST BE DISMISSED.

### A.    Plaintiff Alleges No Improper Acts that Occurred in Florida.

Beaudoin pleads zero conduct—let alone an injury—that occurred in Florida. Thus, her FDUTPA claim should be dismissed.

The "FDUTPA applies only to action that occurred within the state of Florida." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 606 (S.D.N.Y. 2022) (quoting *Hakim-Daccach v. Knauf Int'l GmbH*, 2017 WL 5634629, at *7 (S.D. Fla. Nov. 22, 2017)). In order to plead an FDUTPA claim, a plaintiff "must plausibly allege that at least some improper acts occurred in Florida." *Id.* Here, Beaudoin alleges that she is a "citizen of Florida and maintains a residence in Livonia, Michigan," and that she purchased the Product on Amazon "while at her home in Michigan." SAC ¶ 12. But Beaudoin's Florida citizenship, alone, is insufficient to bring her claims within the scope of the FDUTPA. *See Toretto*, 583 F. Supp. 3d at 606 (rejecting plaintiff's argument that "it is enough that the conduct generated a sufficient relationship with Florida by injuring Florida investors like [the plaintiff]"). Because Beaudoin alleges no "improper acts that actually occurred in Florida at all," her FDUTPA claim should be dismissed. *See Hakim-Daccach*, 2017 WL 5634629, at *7.

**B.    Plaintiff Suffered No Actual Injury, and Thus Has No Standing.**

Beaudoin's FDUTPA claim also fails because she fails to plead any actual financial injury resulting from the allegedly misleading Product label.[11]  Like the NYGBL, the FDUTPA requires an *actual injury* resulting from the allegedly deceptive conduct.  *See Irvine*, 2017 WL 4326538, at *3 (applying same standard for NYGBL and FDUTPA and collecting cases).  In other words, "neither New York nor Florida law recognizes 'an injury based on deception itself—the fact that [a] Plaintiff was deceived is not, standing alone, an 'actual injury.''"  *Id*. (alteration in original) (quoting *Belcastro v. Burberry Ltd*., 2017 WL 744596, at *3 (S.D.N.Y. Feb. 23, 2017)).  Thus, because Beaudoin fails to plead any price difference as a result of lower SPF, the FDUTPA claim fails to state an injury for the same reasons as the NYGBL claim (*see* Section VII.A). *Lombardo v. Johnson & Johnson Consumer Companies*, *Inc*., 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) ("[P]aying premium rates is vital to [a] FDUTPA claim because *actual* loss is a predicate to recovery under FDUTPA").

**C.    Plaintiff's FDUTPA Claim is Otherwise Insufficiently Pleaded.**

In addition to the standing and injury deficiencies identified above, Beaudoin's FDUTPA claim is insufficiently pleaded because it merely restates Beaudoin's breach of express warranty claim and otherwise fails to sufficiently plead the statutory elements.

It is well-established that "[f]ormulaic recitation of the elements under FDUTPA using conclusory statements is not enough to state a cause of action." *Varnes v. Home Depot USA*, *Inc*.,

---

[11] The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).  In order to state an FDUTPA claim, a plaintiff must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Guerrero v.Target Corp*., 889 F. Supp. 2d 1348 (S.D. Fla. 2012).  Because "the gravamen of" Beaudoin's FDUTPA claim sounds in fraud, it is subject to the Rule 9(b) pleading requirements. *Hertz Corp. v. Accenture LLP*, 2019 WL 5537997, at *3 (S.D.N.Y. 2019) (noting that "the prevailing view" of Florida courts "is that Rule 9(b) applies where the gravamen of the [FDUTPA] claim sounds in fraud" (internal quotation omitted)).  For the reasons discussed in Section VIII.B, Beaudoin's claims do not meet this heightened bar.

2012 WL 5611055, at *1 (M.D. Fla. Nov. 15, 2012). Thus, "[m]ere allegations of intentional breach of contract are insufficient to state a claim under the statute," *Hache v. Damon Corp*., 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008), and "significant allegations of unfair or deceptive conduct" are required to plead an FDUTPA claim. *Id*. Here, Beaudoin's FDUTPA allegations are premised on the same factual allegations as the breach of express warranty claim. SAC ¶¶ 105-11, 155-67. Beaudoin's FDUTPA claim merely incorporates conclusory statements from the statute, and does not identify specific facts associated with such claim that are not already associated with the express warranty claim. Accordingly, Beaudoin's claim must be dismissed. *See Horton v Woodman Labs, Inc*., 2014 WL 1329355, at *4 (M.D. Fla. Apr. 2, 2014) (complaint failed to allege unfair or deceptive practices where it "d[id] not include facts that support … conclusory remarks other than the facts associated with the breach of express warranty claim").

## X.    THE MICHIGAN PLAINTIFF'S CLAIMS MUST BE DISMISSED.

Beaudoin fails to plead a claim under the MCPA because she does not plead any reliance on the alleged misrepresentation. "The provisions of the MCPA are to be construed with reference to the common-law tort of fraud," which requires, among other things, that plaintiff allege that he or she "acted in reliance upon" the misrepresentation. *In re OnStar Cont. Litig*., 278 F.R.D. 352, 376 (E.D. Mich. 2011) (quoting *Kussy v. Home Depot U.S.A., Inc*., 2006 WL 3447146, at *5 (E.D. Mich. 2006)).[12] Nowhere does Beaudoin plead that she actually saw the Products' label, let alone relied on any statement in particular, *prior* to her purchase—thus giving rise to an inference that it was material. *See* SAC ¶ 12, 148-54. Beaudoin's conclusory and unspecific allegation that she

---

[12] The elements of the MCPA claim must be alleged with particularity. *Fishon v. Peloton Interactive, Inc*., 2022 WL 179771, at *5 (S.D.N.Y. 2022) ("When a plaintiff's MCPA claim is based on both affirmative misrepresentations and alleged omissions, thus suggesting fraudulent conduct, the plaintiff must state with particularity the circumstances constituting fraud or mistake, consistent with [Rule] 9(b)." (alteration in original) (internal citations and quotations omitted)). For the reasons discussed in Section VIIIB, Plaintiff does not allege her claims with the requisite particularity.

bought the Products "[b]ased on the representation" at an unknown time is insufficient to state an

MCPA claim. *Fishon*, 2022 WL 179771, at *7 (finding plaintiff's allegation "insufficient" where

"she [alleged] she entered into a transaction … 'relying on Peloton's uniform representations about

its 'ever-growing' on-demand library of fitness classes'" because she did not allege "the facts

giving rise to her reliance on that statement with any level of specificity").  Thus, Beaudoin's

MCPA claim must be dismissed.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Supergoop! respectfully requests that the Court grant

its motion to dismiss Plaintiffs' Second Amended Complaint in its entirety with prejudice.

Dated: New York, New York
       March 21, 2025

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: *Richard A. Jacobsen*
       Richard A. Jacobsen
       Rjacobsen@orrick.com
       Marc R. Shapiro
       mrshapiro@orrick.com
       Gregory Beaman
       gbeaman@orrick.com

       51 West 52nd Street
       New York, NY  10019-6142
       +1 212 506 5000

Attorneys for Defendant Supergoop LLC

## CERTIFICATE OF COMPLIANCE

I certify that, excluding the caption, table of contents, table of authorities, signature block and this certification, the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss the Second Amended Complaint contains 8,750 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: March 21, 2025

/s/ *Richard A. Jacobsen*
Richard A. Jacobsen
