UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                                      :
MARCEANN DUNNING, AMBER LATIF, and JANET   :
BEAUDOIN, *individually and on behalf of all others*   :
*similarly situated*,                                                 :
                                                                      :
                                    Plaintiffs,                       :
                                                                      :
              -v-                                                     :         23 Civ. 11242 (JPC)
                                                                      :
SUPERGOOP, LLC,                                                       :         OPINION AND ORDER
                                                                      :
                                    Defendant.                        :
                                                                      :
----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

For the second time, Defendant Supergoop, LLC ("Supergoop") moves to dismiss a putative class action alleging that two of its sunscreen products contain a lower Sun Protection Factor ("SPF") level than indicated on their labels. On January 6, 2025, the Court dismissed the First Amended Complaint for lack of Article III standing and *sua sponte* granted leave to amend. *Dunning v. Supergoop, LLC*, No. 23 Civ. 11242 (JPC), 2025 WL 34822, at *7 (S.D.N.Y. Jan. 6, 2025). Plaintiffs MarceAnn Dunning and Amber Latif, along with newly named Plaintiff Janet Beaudoin (collectively, "Plaintiffs"), then filed a Second Amended Complaint with new claims and additional allegations in support of their standing. Supergoop moves to dismiss the Second Amended Complaint, arguing, *inter alia*, that Plaintiffs still fail to adequately plead that they suffered an injury-in-fact. The Court agrees and grants Supergoop's motion to dismiss.[1]

---

[1] The Court determines that oral argument is not necessary to resolve the motion to dismiss and thus denies the parties' requests for oral argument, Dkts. 44, 46.

## I. Background[2]

### A.    Facts

The Court assumes the parties' familiarity with the facts and procedural history.  On approximately April 12, 2023, Dunning purchased Supergoop Mini Unseen Sunscreen SPF 40 for face from a Sephora in a Kohl's store in Nanuet, New York.  SAC ¶ 10.  She paid $22 for the product, but claims she would not have purchased it, or would have only been willing to pay significantly less, if she had known that the sunscreen in fact contained a materially lower SPF. *Id.*  In or around March 2023, Latif purchased Supergoop Unseen Sunscreen SPF 40 for body from an Ulta store in Pleasant Hill, California.  *Id.* ¶ 11.  Like Dunning, Latif allegedly reasonably believed the product provided SPF 40 sun protection based on the representation on its Principal Display Panel ("PDP") and would not have purchased it, or would have only been willing to pay significantly less, had she known that it contained a materially lower SPF.  *Id.*  Beaudoin, a Michigan resident, was at home when she ordered Supergoop Unseen Sunscreen SPF 40 (collectively with the Supergoop Mini Unseen Sunscreen SPF 40 for face that Dunning purchased and the Supergoop Unseen Sunscreen SPF 40 for body that Latif purchased, the "Purchased Products") on Amazon.com on two occasions, on approximately July 16, 2023, and October 22, 2024.  *Id.* ¶ 12.

---

[2] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Second Amended Complaint, Dkt. 37 ("SAC").  *See Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000) ("When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (explaining that "[i]n a motion to dismiss pursuant to [Rule] 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both," and that when "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff" (citation modified)).

The Second Amended Complaint does not allege that Plaintiffs tested the SPF levels of the Purchased Products themselves. Instead, it alleges that Plaintiffs' counsel arranged for SPF testing of three bottles of Supergoop Unseen Sunscreen for face and two bottles of Supergoop Unseen Sunscreen for body (the "Tested Products"). *Id.* ¶¶ 8, 47-49. While Plaintiffs do not allege that the Tested Products were labeled SPF 40, *see id.*, they contend that these products had the "same active ingredients as the ones they purchased," *id.* ¶ 8. Plaintiffs' counsel bought the Tested Products "directly from Supergoop through the Supergoop.com website on August 23, 2023." *Id.* ¶ 48. To facilitate the tests, "Plaintiffs' counsel retained a sunscreen testing laboratory" and then provided the Tested Products to that laboratory for analysis. *Id.* The laboratory performed tests between October 2023 and December 2023 in "strict compliance" with the requirements for sunscreen testing provided by the Food and Drug Administration ("FDA"). *Id.* ¶¶ 47, 49; *see id.* ¶¶ 50-51 (describing the FDA's testing regulations). The tests revealed SPF Label Values[3] of 23 for the Unseen Sunscreen for face and 20 for the Unseen Sunscreen for body. *Id.* ¶ 52. As alleged, Supergoop "knew or should have known that the [Purchased] Products contain a materially lower SPF protection than the advertised SPF 40 stated on [their] labels because they were required to perform the same testing in accordance with FDA regulations to determine the [Purchased] Products' SPF Label Values." *Id.* ¶ 53.

Plaintiffs also allege that "the same SPF [L]abel [V]alue can be applied to all products by the same manufacture[r] that have the same combination of active ingredients." *Id.* ¶ 44. As alleged by Plaintiffs, because it is assumed "that products with a particular set of active ingredients perform the same on an SPF test," the FDA does not require tests of "multiple samples from

---

[3] The "SPF Label Value" refers to the SPF number that the FDA authorizes for listing on a sunscreen product's PDP. SAC ¶ 43 (citing 21 C.F.R. § 201.327(a)). This value is calculated based on a formula set out in the FDA's regulations. *Id.* ¶¶ 41-43.

differing batches, or samples sold in different geographic regions or through different channels." *Id.* ¶ 65. According to Plaintiffs, if the manufacturer changes a product's active ingredients, it must disclose that change. *Id.* ¶ 45.

Supergoop did not report any change in the active ingredients of the Purchased Products between March 2023 and October 2024. *Id.* ¶ 7. Nor did Supergoop recall any of its products or report contamination, labeling errors, manufacturing issues, "or other events affecting the active ingredients in" the Purchased Products during the period in question. *Id.* ¶ 62. The FDA website also did not publish any such information about the Purchased Products. *Id.* ¶ 63. However, in 2024, Supergoop added a disclaimer to its website stating that "ingredient lists may change or vary from time to time" and advising customers to "refer to the ingredient list on the product package . . . for the most up to date list of ingredients." *Id.* ¶ 70.

## B.    Procedural History

After the Court dismissed Dunning and Latif's First Amended Complaint on January 6, 2025, *see Dunning*, 2025 WL 34822, Plaintiffs filed a Second Amended Complaint on January 22, 2025, Dkt. 37. The Second Amended Complaint added a third named Plaintiff, Janet Beaudoin, two claims, and two subclasses to the putative class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiffs identify five classes: a nationwide class of "[a]ll persons in the United States who purchased the Products between December 2019 and the Present ('Class Period') (the 'Class')," a subclass of "[a]ll residents of, and persons in, New York who purchased the Products during the Class Period (the 'New York Subclass')," a second subclass of "[a]ll residents of, and persons in, California who purchased the Products during the Class Period (the 'California Subclass')," a third subclass of "[a]ll residents of, and persons in, Florida who purchased the Products during the Class Period (the 'Florida Subclass')," and a fourth subclass of

"[a]ll residents of, and persons in, Michigan who purchased the Products during the Class Period (the 'Michigan Subclass')." *Id.* ¶ 73.

They plead nine claims: (1) violations of New York General Business Law Section 349, *id.* ¶¶ 89-96; (2) violations of New York General Business Law Section 350, *id.* ¶¶ 97-104; (3) breach of express warranty, *id.* ¶¶ 105-111; (4) violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, SAC ¶¶ 112-120; (5) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, SAC ¶¶ 121-136; (6) violations of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, SAC ¶¶ 137-147; (7) violations of Michigan's Consumer Protection Act, Mich. Comp. Laws §§ 445.902 *et seq.*, SAC ¶¶ 148-154; (8) violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, SAC ¶¶ 155-167; and (9) unjust enrichment, *id.* ¶¶ 168-173.[4]  Plaintiffs seek various kinds of damages and restitution. *Id.* at 37-38.

On March 21, 2025, Supergoop filed a motion to dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[5] Dkts. 42, 43 ("Motion"). Plaintiffs filed their opposition brief on April 21, 2025. Dkt. 45 ("Opposition"). Supergoop replied on May 6, 2025. Dkt. 47 ("Reply").

---

[4] The first and second claims are brought on behalf of Dunning and the New York Subclass, SAC ¶¶ 89-104, the fourth through sixth claims are brought on behalf of Latif and the California Subclass, *id.* ¶¶ 112-147, the seventh claim is brought on behalf of Beaudoin and the Michigan subclass, *id.* ¶¶ 148-154, the eighth claim is brought on behalf of Beaudoin and the Florida subclass, *id.* ¶¶ 155-167, and the third and ninth claims are brought on behalf of all named Plaintiffs and the Class, *id.* ¶¶ 105-111, 168-173.

[5] Because the Court concludes that Plaintiffs' Second Amended Complaint fails to adequately allege subject matter jurisdiction under Rule 12(b)(1), the Court does not reach Supergoop's alternate bases for dismissal under Rule 12(b)(6). *See Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (explaining that when a party brings a motion to dismiss for both lack of standing and failure to state a claim, a court must "begin with standing because it is a 'jurisdictional' requirement and 'must be assessed before reaching the merits'" (quoting *Byrd v. United States*, 584 U.S. 395, 410-11 (2018))).

## II. Discussion

### A. Legal Standard

Supergoop moves to dismiss Plaintiffs' claims under Rule 12(b)(1) for lack of standing, and thus lack of subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The Supreme Court has held that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class.'" *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (citation modified) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). "Moreover, the named class plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Challenges to a court's subject matter jurisdiction under Rule 12(b)(1) may be facial or factual. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Where, as here, a defendant raises a facial challenge to standing, *i.e.*, one "based solely on the allegations of the complaint or the complaint and exhibits attached to it," a court's task "is to determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (citation modified). The plaintiff bears no evidentiary burden in refuting such a challenge. *Id.* The court will accept the complaint's factual allegations as true and "draw all reasonable inferences in favor of the plaintiff." *Id.* at 57 (citation modified).

**B.      Plaintiffs Lack Article III Standing.**

Though the Second Amended Complaint partially fills the gaps that the Court identified in the First Amended Complaint, *see Dunning*, 2025 WL 34822, at *5, the new allegations still fail to plausibly allege that Plaintiffs suffered an injury-in-fact.[6] As before, Plaintiffs contend that they have standing to sue based on a price-premium theory of injury, *see* Opposition at 6, and Supergoop seeks dismissal based on the absence of an alleged injury-in-fact, *see* Motion at 6. The Court thus conducts the same standing analysis here as in its Opinion and Order dismissing the First Amended Complaint, *see Dunning*, 2025 WL 34822, at *4-7, accounting for the Second Amended Complaint's new allegations.

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Supergoop argues that Plaintiffs have not adequately alleged an injury-in-fact because they fail to plead facts that "'meaningfully link the results' of the testing they performed to their actual Purchased [P]roducts." Motion at 3 (quoting *Dunning*, 2025 WL 34822, at *5) (alterations adopted).

"[A]t the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d

---

[6] The missing information identified in the Court's prior Opinion and Order comprised the purchase dates of the Tested Products, the number of samples tested, where the Tested Products were purchased, and whether the Tested Products "were produced in a consistent manner through a standardized manufacturing process." *Dunning*, 2025 WL 34822, at *5 (quoting *Hicks v. L'Oréal U.S.A., Inc.* ("*Hicks II*"), Nos. 22 Civ. 1989 (JPC), 22 Civ. 3926 (JPC), 2024 WL 4252498, at *11 n.10 (S.D.N.Y. Sept. 19, 2024)).

Cir. 2017) (quoting *Lujan*, 504 U.S. at 561).  Notwithstanding this relatively lenient pleading standard, Plaintiffs still "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief."  *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 65-66 (2d Cir. 2021) (citation modified).  Though Plaintiffs' price-premium theory "has been broadly accepted in the Second Circuit," it still requires sufficient factual allegations "to allow the inference that the [Purchased Products] in fact [were misbranded], or that there was a material risk that they [were]."  *Hicks v. L'Oréal U.S.A., Inc.* ("*Hicks I*"), Nos. 22 Civ. 1989 (JPC), 22 Civ. 3926 (JPC), 2023 WL 6386847, at *7 (S.D.N.Y. Sept. 30, 2023).

Plaintiffs do not allege in the Second Amended Complaint that they tested the specific products that they bought,[7] foreclosing "the most direct route to establishing injury-in-fact" for their misbranding allegations.  *Dunning*, 2025 WL 34822, at *4 (citation modified) (quoting *Onaka v. Shiseido Ams. Corp.*, No. 21 Civ. 10665 (LAP), 2024 WL 1177976, at *2 (S.D.N.Y. Mar. 19, 2024)); *see Hicks II*, 2024 WL 4252498, at *9 (explaining that "direct proof is the cleanest and most effective way to establish such an injury").  Instead, they seek to plausibly allege the presence of a mislabeled element in their purchases via indirect means by linking the results of their independent testing of the same product line to the Purchased Products.  *See Hicks II*, 2024 WL

---

[7] In their opposition brief, Plaintiffs contend that they "have now obtained the results of testing of the specific Unseen Body Sunscreen Plaintiff Latif purchased."  Opposition at 1.  But the Second Amended Complaint contains no such allegation.  *See generally* SAC.  As noted, when considering a facial challenge to standing, like the one made by Supergoop here, a court "determine[s] whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue."  *Carter*, 822 F.3d at 56 (citation modified).  Plaintiffs may not amend the Second Amended Complaint's factual allegations through briefing.  *See, e.g.*, *A Star Grp., Inc. v. Manitoba Hydro*, 621 F. App'x 681, 683 (2d Cir. 2015) ("[A] party may not amend its pleadings through statements in its briefs." (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *cf. In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 562 (S.D.N.Y. 2011) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." (citation modified)).

4252498, at *9.  By that approach, Plaintiffs can establish standing only if they "meaningfully link[] those results" to their actual Purchased Products.  *Hicks I*, 2023 WL 6386847, at *9.  This requires factual allegations sufficient to support a plausible inference that the "third party's analysis can be reasonably extrapolated to the plaintiff's individual purchase," *Kell v. Lily's Sweets, LLC*, No. 23 Civ. 147 (VM), 2024 WL 1116651, at *5 (S.D.N.Y. Mar. 13, 2024) (collecting cases), such as a showing "that the mislabeling was systematic and routine," *John*, 858 F.3d at 736 (citation modified).

As the Court explained previously, to determine whether a meaningful link exists between the results of testing and a plaintiff's actual purchases, courts consider the temporal proximity of a plaintiff's actual purchases and the purchases of the products tested; the number of samples tested; how widespread the mislabeling was in the samples; and, to the extent relevant, geographic proximity.  *Dunning*, 2025 WL 34822, at *5; *see, e.g.*, *Kell*, 2024 WL 1116651, at *4 (finding significant that "the [c]omplaint lack[ed] any factual allegations about whether [the products purchased] and the samples tested . . . were purchased in similar circumstances (for instance, whether [the plaintiff] purchased them at a similar time and place)"); *Esquibel v. Colgate-Palmolive Co.*, No. 23 Civ. 742 (LTS), 2023 WL 7412169, at *2 (S.D.N.Y. Nov. 9, 2023) (faulting the plaintiffs for failing to provide information on "where those [tested] units were acquired").  "Taken together, these factors help a judge answer the ultimate question of whether the presence of mislabeling in a product 'is so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once.'"  *Dunning*, 2025 WL 34822, at *5 (quoting *Hicks II*, 2024 WL 4252498, at *10).

No factor is dispositive, but temporal proximity is arguably the "most significant."  *Hicks II*, 2024 WL 4252498, at *10.  In *John*, third-party tests over several months revealed eight Whole

Foods stores' "systematic" practice of mislabeling products. 858 F.3d at 736 (citation modified). Because the plaintiff "regularly" shopped during the testing period at two of those stores, the Second Circuit concluded that it was plausible that he bought a mislabeled product. *Id.* at 737. Even if a plaintiff does not routinely buy products inside the same time period as the testing, any purchases nevertheless must have, "at a minimum, . . . occurred 'reasonably near in time'" to the testing to establish the necessary link between the tested and purchased products. *Onaka*, 2024 WL 1177976, at *2 (quoting *Clinger v. Edgewell Personal Care Brands, LLC*, No. 21 Civ. 1040 (JAM), 2023 WL 2477499, at *4 (D. Conn. Mar. 13, 2023)); *see Hicks II*, 2024 WL 4252498, at *10 (collecting cases). Products purchased close in time are likelier to have the relevant characteristics in common than those purchased over wide ranges of time. But even then, "temporal proximity between the testing and the purchase cannot alone support" the linkage. *Lurenz v. Coca-Cola Co.*, No. 22 Civ. 10941 (NSR), 2024 WL 2943834, at *4 (S.D.N.Y. June 10, 2024) (declining to infer injury-in-fact when the plaintiff bought the product in the same month as the tested product).

Plaintiffs contend that the Court can infer from the analysis of the Tested Products that the Purchased Products had sub-40 SPF levels because: (i) the Tested Products and the Purchased Products contained the same active ingredients, (ii) the manufacturing of those products is uniform, and (iii) the Tested Products' active ingredients were tested using FDA-compliant procedures that should accurately reveal the true SPF level for all products with the same active ingredients, such that their test results can be imputed to the Purchased Products. Opposition at 6-7. The Tested and Purchased Products are meaningfully linked, Plaintiffs argue, because they contain identical active ingredients and, "under FDA [r]egulations, sunscreens with the same active ingredients *should* perform at the same stated SPF Label Value." *Id.* at 7 (emphasis in

10

original).  But that reasoning is too speculative to support the inference that Plaintiffs themselves suffered an injury.  The most Plaintiffs plausibly allege is that the two bottles of Unseen Sunscreen for body and the three bottles of Unseen Sunscreen for face that their lawyers bought in August 2023—*i.e.*, the Tested Products—were labeled with a higher SPF value than they contained.[8]  *See Kell*, 2024 WL 1116651, at \*4 (rejecting as "impermissible conjecture" the plaintiff's extrapolation of the results of a third party's test of two or three samples of a specific chocolate bar to every such bar "ever sold, or to the specific [p]roducts purchased by [the plaintiff], without some specific factual basis to do so").

Like its predecessor, the Second Amended Complaint fails to plead sufficient facts to suggest that mislabeling was "so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once."  *Dunning*, 2025 WL 34822, at \*5 (quoting *Hicks II*, 2024 WL 4252498, at \*10).  First, in contrast to *John*, Plaintiffs did not buy the Purchased Products during a time period in which systemic mislabeling was plausibly alleged.  *See John*, 858 F.3d at 734.  Plaintiffs' counsel acquired the Tested Products on a single day, not over the course of months.  SAC ¶ 48.  Even if Plaintiffs' purchases merely needed to be "reasonably near in time" to the Tested Products' purchase date, *Onaka*, 2024 WL 1177976, at \*2 (quoting *Clinger*, 2023 WL 2477499, at \*4), rather than during a period in which a systemic flaw was uncovered, only one of the Purchased Products was.  Latif and Dunning bought Supergoop products in March and April 2023, respectively—five and four months before Plaintiffs' counsel bought the Tested Products.  SAC ¶¶ 10, 11, 48.  Beaudoin bought one Supergoop bottle in July 2023 and a second in October 2024—one month before and fourteen months after the Tested Products' purchase date.  *Id.* ¶¶ 12,

---

[8] As mentioned, Plaintiffs' Second Amended Complaint does not specifically allege that the Tested Products were labeled SPF 40, although that is the implication of the pleading.  For purposes of this Opinion and Order, the Court assumes the Tested Products were so labeled.

48.    Beaudoin's July 2023 purchase is obviously the acquisition that is closest to the Tested Products' purchase, giving her the strongest standing argument of the three Plaintiffs.  But even accounting for the relative strength of her claim, the shortcomings described below nevertheless defeat the inference that the Testing Products' SPF levels can be imputed to any of the Purchased Products.

To start, Plaintiffs tested too few samples to suggest broad mislabeling.  Even though all the Tested Products contained sub-40 SPF levels, *id.* ¶ 52, just two samples of body sunscreen and three samples of face sunscreen are a thin reed to support the inference of widespread mislabeling.  That small sample size, considered alongside the temporal distance between the purchases of the Tested Products and all but one of the Purchased Products, does not allow for a plausible inference that the Purchased Products were mislabeled, even taking into account Beaudoin's July 2023 purchase.  *See Kell*, 2024 WL 1116651, at *4 (finding no injury-in-fact "based on just two or three samples" and the absence of allegations about whether the purchased products and tested products "were purchased in similar circumstances"); *see also Hicks II*, 2024 WL 4252498, at *11 (noting that a "small" sample size—one tube for each of five products—along with several other shortcomings "might very well preclude" finding an injury-in-fact, but concluding that a test of thirty-two samples permitted the inference of an injury-in-fact).  Moreover, Plaintiffs' counsel acquired all of the Tested Products in a single order.  SAC ¶ 48.  Any number of defects—at the manufacturing facility, in Supergoop's storage, in the course of delivery, in counsel's storage, or at the laboratory—may have changed the character of the Tested Products relative to the Purchased Products and compromised any basis for extrapolating the test results.[9]

---

[9] Indeed, the Second Amended Complaint lacks detail as to the delivery and storage of the Tested Products, alleging merely that Plaintiffs' "[c]ounsel supplied the laboratory with" the

Plaintiffs' argument is weaker still because the Second Amended Complaint fails to plead any facts pertaining to "the geographic proximity of the testing to the plaintiff[s'] purchases." *Hicks II*, 2024 WL 4252498, at \*10. Though the Second Amended Complaint alleges that Supergoop did not publicize any reports of contaminations or issues with manufacturing or labeling, SAC ¶¶ 61-65, it does not allege any facts about Supergoop's manufacturing processes that would eliminate the need to allege geographic proximity. *See Hicks II*, 2024 WL 4252498, at \*10 (explaining that courts consider geographic proximity only "[t]o the extent relevant to the product at issue").[10] This lack of detail contrasts sharply with the information before the court in *John*, where a city regulator found that eighty types of food were mislabeled and the plaintiff "pleaded that he had 'regularly' purchased the same products, from the same store locations, and during the same time period covered by the regulator's investigation." *Kell*, 2024 WL 1116651, at \*4 (citing *John*, 858 F.3d at 737).

Plaintiffs argue that temporal proximity and geographic proximity are largely "irrelevant" because Supergoop used the same active ingredients in the Tested Products as in the Purchased Products. Opposition at 9. They thus wave off as "inapposite" the cases that analyze those factors. *Id.* at 8. That misses the point of the inquiry. Plaintiffs employ the indirect method for alleging injury-in-fact precisely because they cannot directly allege that their purchases of the Purchased Products injured them. Extrapolating the results of third-party tests could adequately plead injury-in-fact, but not without a larger sample size and allegations that better support the inference that

---

Tested Products and that those bottles "were kept at room temperature prior to testing, as they would be in a store where sunscreen is sold." SAC ¶ 48.

[10] For instance, does Supergoop have one manufacturing facility or multiple? Do distributors procure the product from different facilities? Does one factory supply customers who buy directly from Supergoop's website, like Plaintiffs' counsel, while another supplies retailers, like those that Plaintiffs bought from?

13

the Purchased Products share the characteristics of the Tested Products, such as closer temporal proximity of the purchases and more information about geographic proximity or the manufacturing process. Absent that information, the Court "cannot draw the inference that mislabeling in the Products was 'so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once.'" *Dunning*, 2025 WL 34822, at *6 (quoting *Hicks II*, 2024 WL 4252498, at *10). Thus, the Court still "cannot conclude that [mislabeling] in [the Purchased Products] was anything more than a 'sheer possibility.'" *Esquibel*, 2023 WL 7412169, at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Without adequately pleading an injury-in-fact, Plaintiffs do not have Article III standing. The Court therefore dismisses the Second Amended Complaint without prejudice. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]hen a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss the case with prejudice." (citation modified)).

**C.      Leave to Amend**

In the event that the Court grants Supergoop's motion, Plaintiffs request leave to amend a third time to add an allegation that Latif's test of her Supergoop Unseen Sunscreen SPF 40 for body revealed an SPF level below 40. Opposition at 9. A court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court has discretion to "deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (citation modified).

Though Plaintiffs' proposed amendment would not be futile, it would unduly prejudice Supergoop and cause undue delay. Before filing the Second Amended Complaint, Plaintiffs had

requested additional time to "develop facts to address the Court's concern that Plaintiffs have not alleged a meaningful link between the test results and the purchased products," including by conducting "additional testing of the Products."  Dkt. 32 (citation modified).  The Court denied that request because, first, "[t]he Court's *sua sponte* grant of leave to amend [the First Amended Complaint] was not intended to provide Plaintiffs an opportunity to develop additional facts or to conduct new and additional testing to support their standing," and, second, Plaintiffs had been on notice of "possible shortcomings in their pleading of Article III standing" since Supergoop's pre-motion letter of March 28, 2024.  Dkt. 35 at 2.  Plaintiffs try to do now what the Court has already ordered they cannot do in light of their delay.  Accordingly, the Court denies leave to amend.

### III.  Conclusion

For the foregoing reasons, the Court grants Supergoop's motion and dismisses the Second Amended Complaint without prejudice for lack of subject matter jurisdiction.  The Clerk of Court is respectfully directed to terminate the case.

SO ORDERED.

Dated: February 24, 2026
New York, New York

JOHN P. CRONAN
United States District Judge